**KELLEY DRYE & WARREN LLP**
Becca Wahlquist (SBN 215948)
350 South Grand Avenue, Suite 3800
Los Angeles, CA 90071
Telephone: (213) 547-4916
Facsimile: (213) 547-4901
bwahlquist@kelleydrye.com

*Counsel for Defendant Groupon, Inc.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

**ROBERT FREUND,** individually and on behalf of all others similarly situated,

Plaintiff,

v.

**GROUPON, INC.**,

Defendant.

Case No. 3:26-cv-05733-JSC

[Assigned to Hon. Jacqueline Scott Corley]

**NOTICE OF MOTION AND MOTION TO TRANSFER VENUE, OR, IN THE ALTERNATIVE, TO COMPEL ARBITRATION**

Hearing Date: October 15, 2026
Hearing Time: 10:00 a.m.
Hearing Place: Courtroom 8, 19th Floor

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

**PLEASE TAKE NOTICE** that, pursuant to Local Civil Rule 7-2(b), on Thursday, October 15, 2026, at 10:00 a.m., at Courtroom 8 on the 19th floor of the Phillip Burton Federal Building, 450 Golden Gate Avenue, San Francisco, California, 94102, before the Honorable Jacqueline Scott Corley of the United States District Court for the Northern District of California, Defendant Groupon, Inc. ("Groupon") will and hereby does move to transfer this action to the United States District Court for the Northern District of Illinois, or, in the alternative, to compel arbitration.

Specifically, Groupon moves to transfer this action to the U.S. District Court for the Northern District of Illinois pursuant to 28 U.S.C. § 1404(a) and the valid and enforceable forum-selection provision in the parties' Terms of Use, or, in the alternative, to compel arbitration under the arbitration agreements between the parties that apply to this dispute. This Motion is based on this Notice of Motion, the accompanying memorandum of points and authorities in support of this Motion, the attached Declarations of Nate Conner, Andrew Sega, and Becca Wahlquist, all pleadings filed with this Court, any Reply filed in support, and any oral argument that may be presented at the hearing.

DATED: August 31, 2026

By: */s/ Becca Wahlquist*

Becca Wahlquist (SBN 215948)
KELLEY DRYE & WARREN LLP
350 South Grand Avenue, Suite 3800
Los Angeles, CA 90071
Telephone: (213) 547-4916
Facsimile: (213) 547-4901
bwahlquist@kelleydrye.com

*Counsel for Defendant Groupon, Inc.*

**KELLEY DRYE & WARREN LLP**
Becca Wahlquist (SBN 215948)
350 South Grand Avenue, Suite 3800
Los Angeles, CA 90071
Telephone: (213) 547-4916
Facsimile: (213) 547-4901
bwahlquist@kelleydrye.com

*Counsel for Defendant Groupon, Inc.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **ROBERT FREUND,** individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**GROUPON, INC.**,<br><br>Defendant. | Case No. 3:26-cv-05733-JSC<br><br>[Assigned to Hon. Jacqueline Scott Corley]<br><br>**MOTION TO TRANSFER VENUE, OR, IN THE ALTERNATIVE, TO COMPEL ARBITRATION**<br><br>Hearing Date: October 15, 2026<br>Hearing Time: 10:00 a.m.<br>Hearing Place: Courtroom 8, 19th Floor |

**TABLE OF CONTENTS**

**Page**

I. PRELIMINARY STATEMENT ..... 1
II. STATEMENT OF FACTS ..... 1
III. MOTION TO TRANSFER VENUE ..... 5
A. Legal Standard: 28 U.S.C. § 1404(a) ..... 5
B. Plaintiff Is Bound By The Groupon Terms' Valid And Enforceable Forum-Selection Clause ..... 5
C. The Forum-Selection Clause Applies To The Complaint ..... 6
D. The Forum-Selection Clause Is Valid And Enforceable ..... 7
E. No "Exceptional" Circumstances Exist To Warrant Disregarding The Forum-Selection Clause ..... 10
IV. MOTION TO COMPEL ARBITRATION ..... 12
A. Legal Standard: The FAA Mandates Enforcement Of The Arbitration Agreement ..... 13
B. A Valid Agreement To Arbitrate Exists ..... 14
C. Plaintiff's Claims Fall Within The Scope Of The Arbitration Agreement ..... 15
D. The Court Should Stay This Action Pending The Outcome Of Arbitration ..... 17
V. CONCLUSION ..... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Online, Inc. v. Super. Ct.*,
90 Cal. App. 4th 1 (2001) ....................10

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) ....................13

*Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of T.X.*,
571 U.S. 49 (2013) ....................5, 10

*Babaeva v. J. Crew Grp., LLC*,
No. 4:23-cv-01695, 2023 WL 7346079 (N.D. Cal. Nov. 6, 2023) ....................14

*Beltran v. Nationstar Mortg. LLC*,
No. 3:25-cv-04412-JSC, 2026 WL 637337 (N.D. Cal. Mar. 6, 2026) ....................10

*Benson v. Casa de Capri Enters., LLC*,
980 F.3d 1328 (9th Cir. 2020) ....................13

*Bernal v. Kohl's Corp.*,
No. 5:23-cv-01779, 2023 WL 8008977 (C.D. Cal. Nov. 17, 2023) ....................8, 10

*Brennan v. Opus Bank*,
796 F.3d 1125 (9th Cir. 2015) ....................13

*Bromlow v. D & M Carriers, LLC*,
438 F. Supp. 3d 1021 (N.D. Cal. 2020) ....................9, 11

*Burris v. Discover Bank*,
No. 8:19-cv-01092, 2019 WL 9516076 (C.D. Cal. Sept. 20, 2019) ....................17

*Cape Flattery Ltd. v. Titan Mar., LLC*,
647 F.3d 914 (9th Cir. 2011) ....................13

*Celtic Int'l, LLC v. J.B. Hunt Transp., Inc.*,
234 F. Supp. 3d 1034 (E.D. Cal. 2017) ....................7

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
207 F.3d 1126 (9th Cir. 2000) ....................13, 14, 16

*Corn v. Kohl's Corp.*,
No. 3:24-cv-02455, 2025 WL 1785943 (N.D. Cal. June 9, 2025) ....................6

*Cox v. Ocean View Hotel Corp.*,
533 F.3d 1114 (9th Cir. 2008) ....................13

*Creisat v. Fin. Partners Credit Union*,
Case No. 2:24-cv-00111, 2024 WL 7091492 (C.D. Cal. Apr. 24, 2024) ....................17

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985) ....................13

*Democracy Council of Cal. v. WRN Ltd., PLC*,
No. 2:10-cv-05088, 2010 WL 3834035 (C.D. Cal. Sept. 27, 2010) ....................8

*Erickson v. Affirm Loan Servs., LLC*,
830 F. Supp. 3d 991 (C.D. Cal. 2026) ....................17

*Espinoza v. Walmart, Inc.*,
No. 3:19-cv-01972, 2020 WL 13886119 (S.D. Cal. Apr. 16, 2020) ....................6

*Fedoroff v. Rocket Mortg.*,
No. 3:26-cv-00702-JSC, 2026 WL 1707021 (N.D. Cal. June 12, 2026) ....................10, 11

*Gore v. Alltel Commc'ns, LLC*,
666 F.3d 1027 (7th Cir. 2012) ....................15

*Green Tree Fin. Corp.-Alabama v. Randolph*,
531 U.S. 79 (2000) ....................14

*Italian Colors Rest. v. Am. Express Co.*,
No. 3:03-cv-03719, 2003 WL 22682482 (N.D. Cal. Nov. 10, 2003) ....................12

*Karim v. Best Buy Co.*,
No. 3:22-cv-04909, 2023 WL 3801909 (N.D. Cal. June 2, 2023) ....................16

*Klein v. Coppersmith Glob. Logistics*,
No. 2:14-cv-00748, 2015 WL 1345308 (E.D. Cal. 2015) ....................8

*Lag Shot LLC v. Facebook, Inc.*,
545 F. Supp. 3d 770 (N.D. Cal. 2021) ....................17

*M/S Bremen v. Zapata Off–Shore Co.*,
407 U.S. 1 (1972) ....................7

*Manetti-Farrow, Inc. v. Gucci Am., Inc.*,
858 F.2d 509 (9th Cir. 1988) ....................6, 7

*Martinez v. Choose Your Horizon, Inc.*,
No. 3:24-cv-02798, 2025 WL 2498138 (N.D. Cal. Sept. 1, 2025) ....................16

*Melo v. Zumper, Inc.*,
439 F. Supp. 3d 683 (E.D. Va. 2020) ....................7, 11

*Morgan Tire of Sacramento, Inc. v. Goodyear Tire & Rubber Co.*,
60 F. Supp. 3d 1109 (E.D. Cal. 2014)....5

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983)....13

*Mu Tech, Inc. v. Yin*,
No. 3:24-cv-01976, 2025 WL 2780173 (S.D. Cal. Sept. 29, 2025)....16

*Murphy v. Schneider Nat'l, Inc.*,
362 F. 3d 1133 (9th Cir. 2004)....7

*Rabinowitz v. Samsung Elecs. Am., Inc.*,
No. 3:14-cv-00801, 2014 WL 5422576 (N.D. Cal. Oct. 10, 2014)....12

*Rafeh v. Gold Star Mortg. Fin. Grp., Corp.*,
No. 2:19-cv-00157, 2019 WL 3067199 (C.D. Cal. July 12, 2019)....8

*Richards v. Lloyd's of London*,
135 F.3d 1289 (9th Cir. 1998)....7

*Socialcom, Inc. v. Arch Ins. Co.*,
No. 2:20-cv-04056, 2020 WL 6815039 (C.D. Cal. July 7, 2020)....10

*Steidinger v. Blackstone Med. Servs.*,
182 F.4th 532 (7th Cir. 2026)....12

*Sun v. Advanced China Healthcare, Inc.*,
901 F.3d 1081 (9th Cir. 2018)....5, 7

*Sundesa, LLC v. IQ Formulations, LLC*,
No. 2:19-cv-06467, 2020 WL 8125541 (C.D. Cal. Aug. 19, 2020)....8

*Tabizon v. Covenant Transp., Inc.*,
No. 2:18-cv-10147, 2019 WL 13244522 (C.D. Cal. Feb. 22, 2019)....5

*Tompkins v. Groupon, Inc.*,
No. 1:26-cv-07661 (N.D. Ill.)....9

*U.S. v. Park Place Assocs., Ltd.*,
563 F.3d 907 (9th Cir. 2009)....14

*Washington v. Cashforiphones.com*,
No. 3:15-cv-00627, 2016 WL 6804429 (S.D. Cal. June 1, 2016)....8

*Zaitzeff v. Peregrine Fin. Grp., Inc.*,
No. 2:08-cv-02874, 2008 WL 11408422 (C.D. Cal. June 23, 2008)....8

**Statutes**

9 U.S.C. § 2 ........ 13

9 U.S.C. § 3 ........ 17

9 U.S.C. § 4 ........ 14

28 U.S.C. § 1404 ........ 5

## I. PRELIMINARY STATEMENT

In March 2026, Plaintiff signed up to receive text messages from Groupon. He claims that marketing texts then sent to him in June 2026 were sent after he withdrew his prior consent and were thus (he alleges) sent in violation of the Telephone Consumer Protection Act ("TCPA"). Plaintiff asserts TCPA claims on behalf of a putative nationwide class of persons and, by filing his Complaint before this Court, attempts to select the Northern District of California as the forum for this dispute. However, the Terms that Plaintiff accepted as a Groupon customer—including when enrolling in Groupon's marketing text program—contain a forum-selection clause establishing that any litigation (other than a small claims litigation) may be instituted only in a state or federal court in Cook County, Illinois/Northern District of Illinois. Plaintiff's nationwide class action is thus improperly brought in the Northern District of California and, if it is to proceed in federal court, it must proceed in the Northern District of Illinois.

Groupon thus moves to transfer venue to the Northern District of Illinois. Once there, Groupon will move the Northern District of Illinois to compel individual arbitration of Plaintiff's claims pursuant to the parties' agreements, which have a class action waiver and contain an arbitration provision requiring individual arbitration of a customer's disputes with Groupon.

Alternatively, should this Court turn to the question of arbitration before transferring this action, Groupon moves to compel individual arbitration of Plaintiff's claims pursuant to his acceptance of Groupon's Terms of Use, which have long contained an arbitration provision requiring individual arbitration of Plaintiff's dispute.

## II. STATEMENT OF FACTS

Groupon, which is based in Chicago, Illinois, is an online marketplace that connects its customers with local merchants by offering prepaid discounted vouchers for activities, travel, goods, and services. (*See* Decl. of Nate Conner ("Conner Decl."), ¶ 2.) Users can browse Groupon's mobile app or website to find local deals—such as restaurant discounts, spa treatments, concert tickets, or hotel stays—at substantial discounts off of regular prices. (*Id.*, ¶ 3.) Customers buy a voucher, called a "Groupon" in advance and then redeem it with the local merchant using a digital code or printed copy of the Groupon. (*Id.*, ¶ 4.) Groupon's customers benefit from discounts and

the local businesses benefit from the opportunity to increase their customer base. (*Id.*, ¶ 5.) Groupon promotes its available deals on its website, in emails, on its mobile application, and through social media, as well as (when a customer has signed up for text messaging), via text. (*Id.*, ¶ 6.) But Groupon does not send text messages promoting offers from local businesses unless a Groupon customer has affirmatively asked to receive marketing texts from Groupon. (*Id.*, ¶ 7.)

Plaintiff Robert Freund is a long-time Groupon customer who affirmatively accepted Groupon's Terms of Use multiple times, starting on August 28, 2011, when he created his Groupon account, and thereafter each time he signed into his account or made a purchase of a Groupon. (*See id.*, ¶¶ 10–11.) These Terms of Use have invariably included an agreement that any disputes with Groupon are subject to an arbitration provision, and by 2014 the Terms of Use had added a choice of an Illinois venue for any litigation that may be brought between the parties. (*See id.*, ¶¶ 12, 14 & Ex. A at 6, § 20; Ex. B at 7, § 24(c) (Groupon's 2011 and 2015 Terms, respectively).) Most recently, and as set forth more fully below, Plaintiff again affirmatively assented to Groupon's Terms of Use on March 29, 2026, when he signed up to receive Groupon text messages. (*See id.*, ¶ 15 & Ex. C (February 12, 2026, Terms of Use).) This iteration of the Terms of Use also contained an arbitration provision for disputes between the parties, as well as a Cook County, Illinois, choice of forum for any litigation. (*Id.*, Ex. C at 7–8, § 24.) The parties' current Terms of Use (those in effect as of April 17, 2026) contain these same provisions. (*Id.*, Ex. D at 10–12, § 24 (April 17, 2026, Terms of Use).)

On March 29, 2026, Plaintiff encountered the following prompt to sign up for Groupon's text messaging using his telephone number (530)-XXX-1654 (the "1654 Number") to receive a discount on one of Groupon's local deals:




(*See* Declaration of Andrew Sega ("Sega Decl."), ¶¶ 1–3.) The promotion advertising Groupon's SMS program explicitly stated that, "By clicking this button, you agree to receive recurring automated marketing text messages (e.g., AI content, cart reminders) from Groupon at the number you provide. . . . **By clicking this button, you also agree to our <u>Terms (incl. arbitration)</u> & <u>Privacy Policy</u>**." (*Id.* (emphasis added).) The phrase "Terms (incl. arbitration)" was hyperlinked to Groupon's Terms of Use dated February 12, 2026. (*See* Sega. Decl., ¶ 4; Conner Decl., ¶ 15.) The Terms were then updated by Groupon on April 17, 2026, in accordance with the Terms' Modification provision. (*See* Conner Decl., Ex. C at 2, § 5 ("Modification"); *see also id.*, Ex. D.) The Terms in effect when Plaintiff received the at-issue texts were the April 17, 2026, Terms of Use. (*Id.*)

Groupon's text messaging program is exclusively limited to customers who go through this same process of providing their phone number, agreeing to Groupon's Terms of Use (and its arbitration provision), and providing prior express consent to receive marketing text messages from Groupon. (*See* Conner Decl., ¶ 8.) To the extent a customer indicates a desire to no longer receive text messages from Groupon, Groupon's policy is to promptly suppress further text messages to the phone number provided and confirm the STOP request. (*See* Sega Decl., ¶¶ 8–10.)

When signing up for text messaging, Plaintiff clicked on the submission button and sent the following message to Groupon's vendor Attentive from his 1654 Number: "I want to subscribe to recurring automated personalized marketing alerts (e.g. cart reminders) from Groupon (ref: MYJ3e)[.]" (*Id.* ¶¶ 5–6.) In response, Groupon's vendor Attentive sent the following message to the 1654 Number: "Groupon: Welcome to Groupon! Msg & data rates may apply. Msg frequency varies. Reply HELP for help, STOP to cancel." (*Id.* ¶ 7.) Then, Plaintiff sent a "STOP" message around fifteen minutes after completing the opt-in process on March 29, 2026. (*See id.* ¶¶ 7–8.) Attentive promptly sent a text message confirming the opt-out status. (*Id.* ¶¶ 9–10.)[1]

The present dispute arises out of Plaintiff's claim that he received additional text messages in June 2026 despite his request to opt-out of text messages. (*See* Compl., ¶¶ 18–19.) Ignoring the Terms that he accepted when opening his Groupon account, as well as when making purchases and enrolling in Groupon's text program, Plaintiff did not provide a Notice of Dispute to Groupon and instead filed a putative nationwide class action lawsuit in the Northern District of California on June 12, 2026, within mere days of receiving the at-issue text messages. (*See generally* Compl.).

But as further detailed in each Motion below, the Terms affirmatively accepted by Plaintiff upon sign-up for texts and the current Terms that control here each include a dispute resolution provision requiring individual arbitration of disputes to be administered by an arbitration provider (Conner Decl., Ex. A at 5, § 13; Ex. B at 7, § 24; Ex. C at 7–8, § 24; Ex. D at 10–12, § 24) as well as (since 2014) a choice of venue (the federal or state courts of Cook County, Illinois) for any litigation. (*Id.*, Ex. B at 7, § 24(c); Ex. C at 8, § 24(f); Ex. D at 12, § 24(f).) Thus, this action should be transferred to the Northern District of Illinois, where Groupon's Motion to Compel Arbitration should be adjudicated—or alternatively, and at the least, the Court should itself compel arbitration and stay this litigation.

[1] Groupon notes that Plaintiff's Complaint alleges that he replied STOP on June 3, 2026 to Groupon's text messages (Dkt. 1 ("Compl.") ¶ 18), but that Attentive's records demonstrate that a STOP request came on March 29, 2026, about fifteen minutes after he opted in to the text messaging program. (*See* Sega Decl. ¶ 8.)

## III. MOTION TO TRANSFER VENUE

### A. Legal Standard: 28 U.S.C. § 1404(a)

Under 28 U.S.C. § 1404(a), a district court may "transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Absent a forum-selection clause, a court considering such a transfer must evaluate the private-interest and public-interest considerations to determine whether transfer is appropriate, including whether, on balance, a transfer would serve the convenience of the parties and witnesses and otherwise promote the interests of justice. *See Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of T.X.*, 571 U.S. 49, 62–63 (2013). A forum-selection clause, however, changes that calculus. *Id.* at 63.

Where there is a valid forum-selection agreement, the court must disregard a plaintiff's choice of forum and apply the forum-selection agreement unless the *plaintiff* can show that "transfer to the forum for which the parties bargained is unwarranted." *Id.* Indeed, "a court must deem all factors relating to the private interests of the parties (such as the relative ease of access to sources of proof; availability of compulsory process for attending of unwilling, and the cost of obtaining attendance of willing, witnesses . . . and all other practical problems that make trial of a case easy, expeditious and inexpensive)" to "weigh[] entirely in favor of the preselected forum." *Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1087–88 (9th Cir. 2018) (internal quotation omitted). To be sure, a court may consider arguments about *public interest* factors, but those factors will rarely defeat a transfer motion. Accordingly, a "proper application of § 1404(a) requires that a ***forum-selection clause be given controlling weight in all but the most exceptional cases***." *Tabizon v. Covenant Transp., Inc.*, No. 2:18-cv-10147, 2019 WL 13244522, at *2 (C.D. Cal. Feb. 22, 2019) (internal quotations omitted) (emphasis added).

### B. Plaintiff Is Bound By The Groupon Terms' Valid And Enforceable Forum-Selection Clause

The threshold issue in determining whether a forum-selection clause applies is determining whether a valid contract containing a forum-selection clause exists. *See Morgan Tire of Sacramento, Inc. v. Goodyear Tire & Rubber Co.*, 60 F. Supp. 3d 1109, 1113 (E.D. Cal. 2014). Here, the Terms affirmatively accepted by Plaintiff had long contained a forum-selection clause establishing that any

litigation between the parties could only be brought in the state or federal courts of Cook County, Illinois. (*See, e.g.*, Conner Decl., Ex. B at 7, § 24(c); Ex. C at 8, § 24(f).) Moreover, the Terms in effect when Plaintiff received the at-issue messages contain the same forum-selection for any litigation:

> (f) **<u>Choice of Law and Forum; No Jury Trial</u>**. If for any reason a Dispute proceeds in court: (i) except with respect to a qualifying claim over a Dispute in a small claims court, which you shall have the right to bring in a court of competent jurisdiction in the county in which you reside, you and Groupon agree that any Dispute may only be instituted in a state or federal court in Cook County, Illinois/Northern District of Illinois; (ii) you and Groupon irrevocably consent and submit to the exclusive personal jurisdiction and venue of such courts for resolution of such Disputes; and (iii) you and Groupon agree to waive any right to a trial by jury.

(Conner Decl., Ex. D. at 12, § 24(f).)

### C. <u>The Forum-Selection Clause Applies To The Complaint</u>

The forum-selection clause to which Plaintiff agreed in the Terms encompasses any Dispute that proceeds in Court. (*See* Conner Decl., Ex. D. at 12, § 24(f) (except for small claims cases, "you and Groupon agree that any Dispute may only be instituted in a state or federal court in Cook County, Illinois/Northern District of Illinois" and "you and Groupon irrevocably consent and submit to the exclusive personal jurisdiction and venue of such courts for resolution of such Disputes"); Ex. C. at 8, § 24(f) (same).) This language is broadly applicable and covers this action. *See Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 (9th Cir. 1988).

Judge Anello's ruling in *Espinoza v. Walmart, Inc.* is instructive. No. 3:19-cv-01972, 2020 WL 13886119 (S.D. Cal. Apr. 16, 2020). That case, which was filed by a consumer in California, involved a motion to compel arbitration pursuant to an agreement that contained a Utah forum-selection clause that applied to "all controversies arising out of or in connection with" the agreement that were "not subject to arbitration." *Id.* After finding that the forum-selection clause was valid, the court transferred the case, along with the motion to compel arbitration, to the forum specified in the parties' forum-selection clause. *Id.* at 11; *see also Corn v. Kohl's Corp.*, No. 3:24-cv-02455,

2025 WL 1785943, at *3 (N.D. Cal. June 9, 2025) (transferring entire case, including motion to compel arbitration, where forum-selection clause in terms and conditions called for the Eastern District of Wisconsin as the exclusive venue for all unarbitrable claims); *Melo v. Zumper, Inc.*, 439 F. Supp. 3d 683, 700 (E.D. Va. 2020) (similar).

This Court should do the same here and transfer this entire action, including the parties' dispute regarding arbitrability, to a federal court sitting in the Northern District of Illinois. There, the court can determine Groupon's Motion to Compel Arbitration and can deal with arguments (if any) that Plaintiff may raise involving arbitrability and/or which version of the Terms of Use (the February 12, 2026 one he affirmatively accepted (Ex. C), or the April 17, 2026 one that was in effect when he received the at-issue text messages (Ex. D)) applies to his dispute.

### D. <u>The Forum-Selection Clause Is Valid And Enforceable</u>

Under federal law, "[f]orum selection clauses are prima facie valid" and should be enforced unless the resisting party shows that "enforcement would be unreasonable or unjust." *Manetti-Farrow, Inc.*, 858 F.2d at 514 (citing *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 15 (1972)). It is a "heavy burden" for Plaintiff to show that "enforcement [of a forum-selection clause] would be unreasonable and unjust." *Murphy v. Schneider Nat'l, Inc.*, 362 F. 3d 1133, 1140 (9th Cir. 2004); *M/S Bremen*, 407 U.S. at 17 (party seeking to invalidate forum-selection clause "should bear a heavy burden of proof"); *Sun*, 901 F.3d at 1084 ("Because the [plaintiffs] have not carried their heavy burden of showing the sort of exceptional circumstances that would justify disregarding a forum-selection clause, we affirm the district court."). There are only three recognized grounds for avoiding a forum-selection clause: (1) when the clause was the product of fraud or overreaching; (2) when the party wishing to repudiate the clause would effectively be deprived of his day in court if the clause is enforced; and (3) when "enforcement would contravene a strong public policy of the forum in which suit is brought." *Richards v. Lloyd's of London*, 135 F.3d 1289, 1294 (9th Cir. 1998); *see also Celtic Int'l, LLC v. J.B. Hunt Transp., Inc.*, 234 F. Supp. 3d 1034, 1038 (E.D. Cal. 2017). None of these grounds applies here:

***First***, there is no basis for Plaintiff to assert that the forum-selection clause in the Groupon Terms of Use was the result of fraud. When challenging a forum-selection clause as fraudulent, a

plaintiff must show that the forum-selection clause *itself*, as opposed to the entire contract in which the clause is found, is specifically the product of fraud or overreaching. *Washington v. Cashforiphones.com*, No. 3:15-cv-00627, 2016 WL 6804429, at *5 (S.D. Cal. June 1, 2016); *Klein v. Coppersmith Glob. Logistics*, No. 2:14-cv-00748, 2015 WL 1345308, at *2 (E.D. Cal. 2015) (claim of fraud requires that plaintiff was "coerced into signing the terms and conditions"). Plaintiff has made no such allegations and could not make any such showing.

***Second***, the circumstances are not such that Plaintiff would be "deprived" of his "day in court" if the forum-selection clause were enforced. "To demonstrate that enforcing a forum selection clause would deprive a party of her day in court, a party must show that the selected forum makes it an impossibility for her to try her case, not simply a less convenient or effective means of doing so." *Rafeh v. Gold Star Mortg. Fin. Grp., Corp.*, No. 2:19-cv-00157, 2019 WL 3067199, at *4 (C.D. Cal. July 12, 2019) (citation omitted); *see also Klein*, 2015 WL 1345308, at *2 (requiring that it be "'gravely difficult' for [plaintiff] to litigate in [the forum selected]"). Inconvenience is an insufficient reason to repudiate the forum-selection clause. *See Democracy Council of Cal. v. WRN Ltd., PLC*, No. 2:10-cv-05088, 2010 WL 3834035, at *5 (C.D. Cal. Sept. 27, 2010), *aff'd*, 471 F. App'x 802 (9th Cir. 2012) (requiring litigation in Hong Kong because it was not "gravely difficult and inconvenient"); *see also Sundesa, LLC v. IQ Formulations, LLC*, No. 2:19-cv-06467, 2020 WL 8125541, at *4 (C.D. Cal. Aug. 19, 2020) (argument that party would be forced to litigate 3000 miles from place of business was "little more than an inconvenience argument" and therefore carried "no weight"); *Zaitzeff v. Peregrine Fin. Grp., Inc.*, No. 2:08-cv-02874, 2008 WL 11408422, at *12 (C.D. Cal. June 23, 2008) (financial hardship and cost of travel not "so insurmountable" that it would deprive plaintiff of his day in court).

Plaintiff will not be deprived of his day in court if this action is transferred to Illinois. Federal courts in Illinois will be as capable as this Court of adjudicating Plaintiff's claims. *Bernal v. Kohl's Corp.*, No. 5:23-cv-01779, 2023 WL 8008977, at *5 (C.D. Cal. Nov. 17, 2023) (holding that similarly situated plaintiffs would not be deprived of their day in court if action were transferred to Wisconsin pursuant to the Terms & Conditions because "[f]ederal courts in Wisconsin are just as capable of adjudicating" the petitioners' claims). As noted below, federal courts regularly apply the

laws of other states, and the fact that a complaint raises state law claims does not preclude transfer to the parties' bargained-for forum. *E.g.*, *Bromlow v. D & M Carriers, LLC*, 438 F. Supp. 3d 1021, 1030 (N.D. Cal. 2020) (transferring case brought under California employment laws to Oklahoma). As to convenience, Plaintiff's lead counsel, Anthony Paronich (who has yet to appear in this action or seek *pro hac vice* admission), is presently pursuing many nationwide TCPA cases in Northern District of Illinois federal courts on behalf of other plaintiffs—he has represented plaintiffs in eighty-nine (89) TCPA cases (almost all which are class action cases) brought in the past five years in the Northern District of Illinois. (*See* Declaration of Becca Wahlquist ("Wahlquist Decl."), ¶¶ 3–4 & Ex. E (list of pending TCPA cases in which Mr. Paronich is acting as Plaintiff's counsel in Northern District of Illinois).) So, Plaintiff can hardly argue that the forum is an inconvenient place for his East Coast-based counsel to represent him.

Moreover, there is already a related case involving Groupon's text messages brought by a putative nationwide class in the Northern District of Illinois filed on June 30, 2026 (less than three weeks after Plaintiff's case was filed in this Court), making the same allegations brought by Plaintiff here. (*See id.*, Ex. F (copy of Complaint filed in *Tompkins v. Groupon, Inc.*, No. 1:26-cv-07661 (N.D. Ill.)).) There is no reason why Plaintiff could not litigate his matter in Illinois as well, where it can be adjudicated along with the related class action case that was brought in the contractually established venue for any litigation. Indeed, because transferring the Illinois-filed action to this Northern California venue (where Groupon is not at home) is improper in light of the forum-selection clause, should the Terms' forum-selection clause not be honored here then duplicative litigation will be proceeding before different federal courts in different federal districts, which is not an efficient use of federal court resources.[2]

[2] As can be common in TCPA litigation, two other putative class action claims were filed in the weeks after this case and the Northern District of Illinois *Tompkins* case were filed in June 2026: *Benotman v. Groupon, Inc.*, filed on July 10, 2026, in the Southern District of Texas, No. 4:26-cv-05477, and *Kolici v. Groupon, Inc.*, filed on July 16, 2026, in the Middle District of Florida, No. 3:26-cv-01820. (*See* Wahlquist Decl., Exs. G & H (*Benotman* and *Kolici* Complaints).) Groupon will be moving these federal courts to transfer venue to the Northern District of Illinois on the same grounds contained in this Motion, or in the alternative, will move these courts to compel arbitration.

***Third***, the forum-selection clause in Groupon's Terms of Use does not contravene California public policy. *See Bernal*, 2023 WL 8008977, at *5 (holding that transfer of action by California customers against Kohl's to Wisconsin would not contravene California's public policy). Given the strong federal policy in favor of enforcing forum-selection clauses, a plaintiff must show more than the forum state's mere interest in adjudicating certain claims to avoid a forum-selection clause. Instead, the plaintiff must point to something, such as a statute or judicial decision, that "clearly states" the intention that such a strong policy should bar enforcement of a forum-selection clause. *Socialcom, Inc. v. Arch Ins. Co.*, No. 2:20-cv-04056, 2020 WL 6815039, at *3 (C.D. Cal. July 7, 2020) (citing *Am. Online, Inc. v. Super. Ct.*, 90 Cal. App. 4th 1 (2001) (expressly holding that enforcement of a forum-selection clause would itself violate important California public policy)). Plaintiff can point to nothing of the sort here.

Therefore, the forum-selection clause in the Groupon Terms of Use is valid and enforceable against Plaintiff.

**E. <u>No "Exceptional" Circumstances Exist To Warrant Disregarding The Forum-Selection Clause</u>**

Once a court finds a valid forum-selection clause, "it is given 'controlling weight in all but the most exceptional cases' and the Court disregards Plaintiff's choice of forum and only considers public-interest factors." *Fedoroff v. Rocket Mortg.*, No. 3:26-cv-00702-JSC, 2026 WL 1707021, at *9 (N.D. Cal. June 12, 2026) (quoting *Atl. Marine Const.*, 571 U.S. at 63–64); *Beltran v. Nationstar Mortg. LLC*, No. 3:25-cv-04412-JSC, 2026 WL 637337, *8 (N.D. Cal. Mar. 6, 2026) ("As the party acting in violation of the forum-selection clause, [Plaintiff] must bear the burden of showing that public-interest factors overwhelmingly disfavor a transfer.") (internal citation omitted). The relevant public interest factors to consider are (i) the relative degrees of court congestion, (ii) the courts' relative familiarity with governing law, and (iii) local interest in deciding localized controversies. *Id.* Public interest factors will "rarely defeat" a motion to transfer—practically speaking, the forum-selection clause will control. *Atl. Marine Const. Co.*, 571 U.S. at 64.

First, a comparison of the judicial caseload profiles for the Northern District of California and the Northern District of Illinois reflects that the caseloads in this Court are far higher than

Illinois. In the 12 months preceding June 30, 2026, of the 94 district courts, judges in the Northern District of California had the 13th highest caseload in the country, while their counterparts in the Northern District of Illinois ranked 19th highest. (*See* Wahlquist Decl. ¶¶ 8–9, Exs. I & J.) Additionally, Illinois judges reported faster termination rates relative to the California judges for civil matters, from filing to disposition, at 5 months and 7 months, respectively. And although Illinois reported a slower time from filing to trial for civil matters than California—48.4 and 29.9 months, respectively—it is not significant enough to constitute the "exceptional" circumstances necessary to disregard a forum-selection clause. (*Id.*, Exs. I & J.); *see also Melo*, 439 F. Supp. 3d at 703 (transferring case because there were "no exceptional public policy factors" sufficient to "outweigh the presumption [] enforcing the forum[-]selection clause").

The second factor, application of governing law, also favors a transfer to Illinois. The Terms of Use are clear: "Any disputes arising out of or related to these Terms of Use and/or any use by you of the Site or Groupon's services shall be governed by the laws of the State of Illinois, without regard to its choice of law rules and without regard to conflicts of laws principles." (Conner Decl., Ex. D at 10 § 23 (Choice of Law); Ex. C at 6–7, § 23; Ex. B at 6, § 23; Ex. A at 6, § 20.) Plaintiff's claims here assert a federal cause of action (TCPA), and there is no connection to California law in this litigation.

As to the third factor, California does not have a sufficiently strong interest in deciding this matter to overcome the forum-selection clause in the Terms of Use. *See Fedoroff*, 2026 WL 1707021, at *10 (finding "both forum states have an interest in adjudicating the controversy" where a California resident sued a Michigan company under California law). Groupon is based in Illinois, and Illinois has an interest in ensuring that businesses located in that state comply with the law. *See, e.g.*, *Bromlow*, 438 F. Supp. 3d at 1030–31. And even if California's interest were slightly greater in protecting its own California residents who want to pursue TCPA claims for texts received in California, that would be insufficient to constitute "extraordinary circumstances" to override the forum-selection clause in the Terms of Use. *Id.* at 1031 (finding that California's expressed strong public interest in adjudicating employment matters concerning California residents was insufficient to override a forum-selection clause). As explained *supra*, Plaintiff asserts putative nationwide class

claims against Groupon and does not limit his class to California residents. With similarly situated plaintiffs across the country, the only state with a connection to all of the claims is Illinois—the location of Groupon's headquarters, and the choice of venue within the Terms for any litigation between the parties.

Plaintiff will likely argue in Opposition that his claims would not fare well in the Northern District of Illinois, given a recent Seventh Circuit ruling holding that the TCPA's Do Not Call provisions do not apply to text messages like those at issue here, and only apply to telemarketing calls. *See Steidinger v. Blackstone Med. Servs.*, 182 F.4th 532, 540 (7th Cir. 2026) ("unwanted text messages are undoubtedly a nuisance. But they do not fall within the private right of action created by § 227(c)(5)."). Plaintiff would thus most likely try to argue the merits of his claims outside of the Seventh Circuit. But a Plaintiff is not free to disregard a valid forum-selection clause and bring claims wherever in the country he feels he might have a better chance of success under that circuit's interpretation of a federal statute. That, indeed, would be a classic example of improper forum-shopping. *See Rabinowitz v. Samsung Elecs. Am., Inc.*, No. 3:14-cv-00801, 2014 WL 5422576, at *3 (N.D. Cal. Oct. 10, 2014) ("A court may disregard the plaintiff's chosen venue entirely if it is a result of forum-shopping.") (citation omitted); *Italian Colors Rest. v. Am. Express Co.*, No. 3:03-cv-03719, 2003 WL 22682482, at *4 (N.D. Cal. Nov. 10, 2003) (granting motion to transfer venue where the court "rationally infer[red] forum shopping [], based on plaintiffs' repeat filing and plaintiffs' admitted perceptions that California provides a more favorable rule of decision").

Further, where there is a valid arbitration provision accepted by a plaintiff (as here), the parties' dispute is due to be compelled to arbitration and it will not be a federal court that determines whether he has a valid claim, as explained in the alternative Motion to Compel Arbitration below.

## IV. MOTION TO COMPEL ARBITRATION

In the alternative, should the Court decline to transfer this case to the Northern District of Illinois, the Court should compel Plaintiff to arbitrate his claims on an individual basis and stay this action pending the outcome of that arbitration.

**A. Legal Standard: The FAA Mandates Enforcement Of The Arbitration Agreement**

The Federal Arbitration Act ("FAA") preempts state law and requires the enforcement of arbitration agreements.[3] The FAA plainly states that agreements to arbitrate "shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. The FAA establishes a general policy favoring arbitration agreements. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011); *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008) ("Section 2 of the FAA creates a policy favoring enforcement of agreements to arbitrate."). Its principal purpose is to "ensure that private arbitration agreements are enforced according to their terms." *Concepcion*, 563 U.S. at 347 n.6. "Arbitration is a matter of contract, and the FAA requires courts to honor parties' expectations." *Id.* at 351.

The FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983); *see also Cape Flattery Ltd. v. Titan Mar., LLC*, 647 F.3d 914, 922 (9th Cir. 2011). "[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Benson v. Casa de Capri Enters., LLC*, 980 F.3d 1328, 1330 (9th Cir. 2020) (citation omitted).

In resolving a motion to compel arbitration under the FAA, a court's inquiry is limited to two "gateway" issues: "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000); *see also Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (same). When those two conditions are satisfied, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in

---

[3] It cannot be disputed that the FAA applies here as the parties' arbitration clause has always specifically stated that it is governed by the FAA. (*See* Conner Decl., Ex. A at 5, § 13; Ex. B at 7, § 24); Ex. C at 7, § 24; Ex. D at 10, § 24.)

original); 9 U.S.C. § 4 ("[U]pon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."); *Chiron Corp.*, 207 F.3d at 1130 (same). The party opposing arbitration, here Plaintiff, bears the burden of proving that the claims at issue are not referable to arbitration. *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91–2 (2000); *U.S. v. Park Place Assocs., Ltd.*, 563 F.3d 907, 921 (9th Cir. 2009).

Both of these conditions—the existence of a valid arbitration agreement that encompasses within its scope the dispute at issue—are met here and this Court (or the court in the Northern District of Illinois, should the case be transferred) should therefore compel arbitration.

**B. A Valid Agreement To Arbitrate Exists**

As explained above, Plaintiff affirmatively agreed to the Terms of Use with Groupon when opening his account in 2011, when making purchases through Groupon in 2012 and 2015, and when enrolling in Groupon's text messaging program in March 2026. *See* Section III.B., *supra*. Accordingly, Plaintiff is bound by Groupon's Terms of Use, which contains an agreement requiring the arbitration of all "Disputes" on an individual basis. *Babaeva v. J. Crew Grp., LLC*, No. 4:23-cv-01695, 2023 WL 7346079, at *2 (N.D. Cal. Nov. 6, 2023) ("As a member of Defendant's reward program, Plaintiff agreed to [be] bound by the terms of the program" including "the agreement to arbitrate claims related to her purchases under the rewards program.").

The existence of an arbitration provision within the Terms of Use was made evident in the presentation of those Terms, where in order to enroll in the text messaging program, Plaintiff was specifically alerted that the Terms he would be accepting included an arbitration provision: "By clicking this button, you also agree to our Terms (incl. arbitration) & Privacy Policy." (*See* Conner Decl., Ex. C at 7–8, § 24); *see also* Sega Decl. ¶¶ 3–4.) The phrase "**Terms (incl. arbitration)**" was hyperlinked to Groupon's Terms of Use dated February 12, 2026. (*See* Conner Decl., Ex. C at 7–8, § 24); *see also* Sega Decl. ¶¶ 3–4.) The February 2026 Terms available through that link make clear at the outset—through bolded and capitalized language—that the Terms include an arbitration provision:

> **THIS AGREEMENT IS SUBJECT TO AN ARBITRATION PROVISION**. PLEASE REVIEW THE FOLLOWING SECTIONS OF THESE TERMS OF USE CAREFULLY: (A) **DISPUTE RESOLUTION/ARBITRATION AGREEMENT** (Section 24) INCLUDING THE **CLASS ACTION WAIVER** DESCRIBED THEREIN (Section 24), (B) **LIMITATION OF LIABILITY** (Section 16) AND (C) **INDEMNIFICATION/RELEASE** (Section 19).

(Conner Decl., Ex. C, at 1 (emphasis in original).)

The arbitration provision itself is clear to describe its effect, using bolded and capitalized language:

> 24. Dispute Resolution/Arbitration Agreement
>
> **PLEASE READ THIS SECTION CAREFULLY, AS IT CONTAINS AN ARBITRATION AGREEMENT. It affects how claims between you and any Groupon Entities will be resolved. There is no judge or jury in arbitration, and court review of an arbitration award is limited.**

(Conner Decl., Ex. C, at 7 (emphasis in original).) The arbitration provision lays out a pre-arbitration notice requirement (which Plaintiff ignored in rushing to file his class action claims) and contains provisions that the arbitration will be administered according to consumer-friendly arbitration rules by an arbitration provider National Arbitration and Mediation ("NAM"). (*See id.*, § 24(c).)

The Terms of Use were then updated on April 17, 2026, in accordance with the February 12, 2026, Terms' Modification provision—but the arbitration provision and forum-selection clauses were unchanged.

### C. <u>Plaintiff's Claims Fall Within The Scope Of The Arbitration Agreement</u>

Once it is clear, as it is here, that the parties have a contract that provides for arbitration of some disputes between them, any doubts concerning the scope of the arbitration clause are resolved in favor of arbitration as a matter of federal law. *Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012). "To this end, a court may not deny a party's request to arbitrate an issue unless it may be said with positive assurance that the arbitration clause is not susceptible of an

interpretation that covers the asserted dispute." *Id.* at 1032–33 (internal quotations and citation omitted). A federal court is to evaluate the arbitration clause at issue to determine whether the clause is "broad and far reaching" or limited in scope. *Chiron Corp.*, 207 F.3d at 1131. "If the scope of the arbitration clause 'is arguably susceptible of an interpretation that the parties agreed to arbitrate' the claims in dispute, federal courts must resolve the issue of scope in favor of arbitration." *Mu Tech, Inc. v. Yin*, No. 3:24-cv-01976, 2025 WL 2780173, at *12 (S.D. Cal. Sept. 29, 2025) (quoting *Republic of Nicar. v. Standard Fruit Co.*, 937 F.2d 469, 479 (9th Cir. 1991)).

The arbitration agreement here is broadly applicable to Disputes between Groupon and its customers and covers Plaintiff's claims in this case. The current and operative Terms of Use that Plaintiff accepted when enrolling in Groupon's text messaging program defines Disputes broadly: **"[a]ny dispute or claim between you and Groupon and/or its subsidiaries, affiliates, and/or any of their respective members, officers, directors, and employees . . . arising out of, relating in any way to, or in connection with the Terms of Use, the Site or your use of the Site, your Personal Information, or any Products or Merchant Offerings ("Dispute(s)")[.]**" (Conner Decl., Ex. D at 10, § 24(a) (emphasis in original).) This is the same definition of Disputes in the earlier version of the Terms accepted by Plaintiff on March 29, 2026. (*See id.*, Ex. C at 7, § 24(a).)

Plaintiff's claims here arise from Groupon's advertising of Products or Merchant Offerings, sent on June 5, 2026, in relation to an offer to book a massage with a discount code and on June 11, 2026, in relation to available Groupons for Father's Day gifting. (*See* Compl. ¶ 19 (alleging two post-opt-out texts sent on June 5 and 11, 2026, and providing images of same).) Plaintiff's dispute relating to the marketing of Product or Merchant Offerings is clearly "arising out of, relating in any way to, or in connection with" Product or Merchant Offerings, and falls squarely inside the Terms' definition of "Disputes". *See Karim v. Best Buy Co.*, No. 3:22-cv-04909, 2023 WL 3801909, at *1 (N.D. Cal. June 2, 2023) (compelling arbitration where the applicable agreement stated "any dispute or claim arising out of or relating in any way to these Terms, or to any products or services sold or distributed by [defendant] . . . will be resolved by binding, individual arbitration, rather than in court"); *Martinez v. Choose Your Horizon, Inc.*, No. 3:24-cv-02798, 2025 WL 2498138, at *9 (N.D. Cal. Sept. 1, 2025) (compelling arbitration where arbitration clause stated "[a]ny controversy,

dispute or claim arising out of, or relating in any way to these Terms or your use of the Site or Service will be resolved by binding arbitration rather than in court"). A broad reading of "arising out of or relating to" is, indeed, required here: "The Ninth Circuit has held that where an arbitration clause includes language such as 'arising out of or relating to' the relationship between the parties, the clause should be interpreted broadly." *Creisat v. Fin. Partners Credit Union*, Case No. 2:24-cv-00111, 2024 WL 7091492, at *3 (C.D. Cal. Apr. 24, 2024) (citing to *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999) ("Every court that has construed the phrase 'arising in connection with' in an arbitration clause has interpreted that language broadly.").[4]

Accordingly, a valid arbitration agreement exists that covers the claims asserted in Plaintiff's Complaint, and the Court should compel Plaintiff to arbitrate those claims.

### D. <u>The Court Should Stay This Action Pending The Outcome Of Arbitration</u>

If the Court does reach the question of arbitration, then all of Plaintiff's claims should be referred to arbitration. And if, for any reason, this Court does not compel arbitration of the entirety of Plaintiff's claims to arbitration, the Court should stay any proceedings in this action pending the outcome of arbitration. *See Lag Shot LLC v. Facebook, Inc.*, 545 F. Supp. 3d 770, 785–86 (N.D. Cal. 2021). Upon a finding that Plaintiff's claims are subject to arbitration, the FAA mandates a stay of "the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3.

## V. CONCLUSION

Groupon respectfully requests that the Court transfer this action to the U.S. District Court for the Northern District of Illinois, or, in the alternative, compel arbitration of Plaintiff's claims.

[4] Further, the fact that the claim at issue concerns communications made after plaintiff's alleged revocation of consent does not take the claim outside the scope of the arbitration provision. *See, e.g.*, *Burris v. Discover Bank*, No. 8:19-cv-01092, 2019 WL 9516076, at *4 (C.D. Cal. Sept. 20, 2019) (rejecting plaintiff's argument that her revocation of consent to calls took any subsequent calls received outside the scope of the arbitration agreement); *Erickson v. Affirm Loan Servs., LLC*, 830 F. Supp. 3d 991, 999 (C.D. Cal. 2026) (same).

DATED: August 31, 2026

By: */s/ Becca Wahlquist*

Becca Wahlquist (SBN 215948)
KELLEY DRYE & WARREN LLP
350 South Grand Avenue, Suite 3800
Los Angeles, CA 90071
Telephone: (213) 547-4916
Facsimile: (213) 547-4901
bwahlquist@kelleydrye.com

*Counsel for Defendant Groupon, Inc.*