**KELLEY DRYE & WARREN LLP**
Becca Wahlquist (SBN 215948)
350 South Grand Avenue, Suite 3800
Los Angeles, CA 90071
Telephone: (213) 547-4916
Facsimile: (213) 547-4901
bwahlquist@kelleydrye.com

*Counsel for Defendant Groupon, Inc.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **ROBERT FREUND,** individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**GROUPON, INC.**,<br><br>Defendant. | Case No. 3:26-cv-05733-JSC<br><br>[Assigned to Hon. Jacqueline Scott Corley]<br><br>**DECLARATION OF NATE CONNER IN SUPPORT OF DEFENDANT'S MOTION TO TRANSFER VENUE, OR, IN THE ALTERNATIVE, TO COMPEL ARBITRATION** |

I, Nate Conner, declare as follows:

1. I am Director of Risk, Legal at Groupon, where I have been employed since March 28, 2011. I have personal knowledge of the facts below, and could testify thereto if so required.

2. Groupon, which is based in Chicago, Illinois, is an online marketplace that connects its customers with local merchants by offering prepaid discounted vouchers for activities, travel, goods, and services.

3. Users can browse Groupon's mobile app or website to find local deals—such as restaurant discounts, spa treatments, concert tickets, or hotel stays—at substantial discounts off of regular prices.

4. Customers buy a voucher, called a "Groupon" in advance and then redeem it with the local merchant using a digital code or printed copy of the Groupon.

5. Groupon's customers benefit from discounts and the local businesses benefit from the opportunity to increase their customer base.

6. Groupon promotes its available deals on its website, in emails, on its mobile application, and through social media, as well as (when a customer has signed up for text messaging) via text.

7. Groupon does not send text messages promoting offers from local businesses unless a Groupon customer has affirmatively asked to receive marketing texts from Groupon.

8. Groupon's text messaging program is exclusively limited to customers who go through the process of providing their phone number, agreeing to Groupon's Terms of Use (and its arbitration provision), and providing prior express consent to receive marketing text messages from Groupon.

9. To the extent a customer indicates a desire to no longer receive text messages from Groupon, Groupon's policy is to promptly suppress further text messages to the phone number provided.

10. Plaintiff Robert Freund is a long-time Groupon customer who affirmatively accepted Groupon's Terms of Use multiple times, starting on August 28, 2011, when he created his Groupon account and thereafter each time he signed into his account or made a purchase of a Groupon. Groupon's records show Groupon purchases by Mr. Freund in 2012 and 2015.

11. Groupon's records show for the acceptance on August 28, 2011, which was the day he opened his Groupon account, Mr. Freund would have affirmatively checked a box that provided hyperlinks to the Terms of Use and Privacy Policy and indicated his acceptance of those agreements. When Mr. Freund created his Groupon account, the Terms of Use he accepted were the terms dated July 9, 2011.

12. A true and correct copy of Groupon's Terms of Use dated July 9, 2011 is attached hereto as **Exhibit A**.

13. Whenever Mr. Freund purchased a Groupon, including in 2012 and 2015, he would also have affirmatively agreed to the then-current Terms in making that purchase, where language above the "COMPLETE ORDER" button would say "By clicking Complete Order I accept the current **Terms and Conditions** and **Privacy Policy**." Only by clicking that "COMPLETE ORDER" button could purchases have been made, including his 2015 purchase that accepted Groupon's more recent Terms of Use.

14. A true and correct copy of Groupon's Terms of Use dated February 19, 2015 is attached hereto as **Exhibit B**.

15. Most recently, Plaintiff again affirmatively assented to Groupon's Terms of Use (and its arbitration provision) on March 29, 2026, when he signed up to receive Groupon text messages. As described in the concurrently filed Declaration of Andrew Sega, which I have reviewed, the hyperlinked Terms of Use and Privacy Policy were provided as hyperlinks during the sign-up process, above the clickable button that would enroll the customer in the text marketing program. As can be seen in the screenshot provided by Mr. Sega, the link to the Terms of Use specifically noted that the Terms included an arbitration provision.

16. The URL link used by Attentive, https://attnl.tv/t/Gv9/r/US for text program signups, goes to Groupon's then-current Terms of Use, which on March 29, 2026, would have been the Terms of Use dated February 12, 2026. A true and correct copy of Groupon's Terms of Use dated February 12, 2026 is attached hereto as **Exhibit C**.

17. On April 17, 2026, Groupon's Terms were updated. A true and correct copy of Groupon's Terms of Use dated April 17, 2026 is attached hereto as **Exhibit D**.

18. The Terms in effect when Plaintiff received the at-issue texts in June 2026 were the Terms of Use dated April 17, 2026.

19. Plaintiff would not have been able to open an account, sign into his account, purchase Groupons, or sign up for SMS text messaging without affirmatively accepting the then-current Terms of Use and the arbitration provision.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

DATED: August 31, 2026

By: */s/* [signature]
NATE CONNER