# EXHIBIT H

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

**CASE NO:**

**ENDRIT KOLICI,**
individually and on behalf of all
others similarly situated,

Plaintiff,

**CLASS ACTION**

**JURY TRIAL DEMANDED**

v.

**GROUPON, INC.,**

Defendant.
_______________________________________/

## FIRST CLASS ACTION COMPLAINT

Plaintiff Endrit Kolici brings this class action against Defendant Groupon, Inc., and alleges as follows upon personal knowledge as to Plaintiff and Plaintiff's own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by Plaintiff's attorneys.

## NATURE OF THE ACTION

1. This is a putative class action brought under the Florida Telephone Solicitation Act ("FTSA"), Fla. Stat. § 501.059.

2. To promote its goods and services, Defendant engages in unsolicited text messaging and continues to text message consumers after they have opted out of Defendant's solicitations.

3. Through this action, Plaintiff seeks injunctive relief to halt Defendant's illegal conduct, which has resulted in the invasion of privacy, harassment, aggravation, and disruption of the daily life of thousands of individuals. Plaintiff also seeks statutory damages on behalf of Plaintiff and members of the Class, and any other available legal or equitable remedies.

**JURISDICTION AND VENUE**

4. Jurisdiction is proper under 28 U.S.C. § 1332(d)(2) because Plaintiff alleges a Florida class and Defendant is a foreign corporation with its principal place of business located in Illinois. Thus, complete diversity exists between the Class and Defendant. The proposed Class contains more than 100 members, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs. Therefore, both the elements of diversity jurisdiction and CAFA jurisdiction are present.

5. Plaintiff seeks $1,500.00 in damages for each text sent to Plaintiff and the Class Members in violation of the FTSA. Plaintiff alleges that Defendant continued sending promotional text messages after consumers replied "STOP" or otherwise communicated that they no longer wished to receive such messages, thereby placing treble damages in controversy. Plaintiff received at least eleven (11) text messages in violation of the FTSA for a total of at least $16,500 in statutory damages.

6. Plaintiff therefore alleges that the proposed Class numbers in the thousands, that minimal diversity exists, and that the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs

7. The Court has personal jurisdiction over Defendant and venue is proper in this District because Defendant directs, markets, and provides its business activities to this District, and because Defendant's unauthorized marketing scheme was directed by Defendant to consumers in this District like Plaintiff.

## PARTIES

8. Plaintiff is a natural person who, at all times relevant to this action, was a citizen and resident of Duval County, Florida.

9. Defendant is an Illinois company based in Chicago, Illinois.

## FACTS

10. Defendant caused multiple text messages to be transmitted to Plaintiff's cellular telephone number ending in 3932 ("3932 Number") after Plaintiff opted out of Defendant's solicitations as depicted below:


85397
https://groupon.a
acf0f8FLvOvQ
Sun, May 10 at 21:40
Groupon: Today is Mother's Day! Up to 75% OFF spa, beauty & dining on Groupon - deals go fast. Today only, don't miss out! groupon.attn.tv/aQEMuVcGGO74
Fri, May 15 at 10:18
Stop
Groupon: You are unsubscribed from messaging. No more messages will be sent. Help at support@attentivemobile.com
Wed, Jun 3 at 18:03
Book your massage today and save 30% with code RELAX. https://grpn.co/QM9Np8-F9M
Thu, Jun 4 at 18:21
Book your massage today and save 30% with code RELAX. https://grpn.co/cl6TH2BB7B
Fri, Jun 5 at 18:36
Make your Dad happy this Father's Day. Tap to shop the
Text Message · SMS
85397
Sat, Jun 6 at 18:15
Up to 75% OFF won't last forever! Tap to save big right now. https://grpn.co/yn7sH2rG9Q
Sun, Jun 7 at 13:00
Summer savings are here! Get up to 75% OFF local deals today. https://grpn.co/QG8Sg9LP8q
Mon, Jun 8 at 18:24
Summer savings are here! Get up to 75% OFF local deals today. Code SUMMER26 at checkout - tap to shop now! https://grpn.co/pW9-b7NP98
Tue, Jun 9 at 18:15
Up to 75% OFF local experiences today only - Ready for Summer Sale is live! Code SUMMER26 at checkout. Don't miss it. https://grpn.co/HQ2cK6Y29l
Wed, Jun 10 at 18:21
Time to unwind this summer. Get up to 30% OFF top-rated massages near you. Use code RELAX - book your session
Text Message · SMS


85397
Wed, Jun 10 at 18:21
Time to unwind this summer. Get up to 30% OFF top-rated massages near you. Use code RELAX - book your session today! https://grpn.co/nd2k776r97
Fri, Jun 19 at 17:05
Up to 30% off the experiences worth booking. Catch them while the prices are down: https://grpn.co/YK27z9fL9y
Sat, Jun 20 at 16:05
Prices just dropped - up to 75% off the season's best. Grab yours before they're gone: https://grpn.co/N78zP6hr6x
Sun, Jun 21 at 18:06
It's Father's Day. Up to 75% off experiences Dad can enjoy today - sort something good now: https://grpn.co/Lz6696g-7j
Mon, Jun 22 at 18:05
Up to 30% off to start your week

11. Plaintiff asked Defendant to stop contacting him on May 15, 2026 but Defendant continued to send him text messages including on June 3, 2026; June 4, 2026; June 19, 2026; June 20, 2026; June 21 2026; and June 22, 2026.

12. As demonstrated by the above screenshots, the purpose of Defendant's text messages was to solicit the sale of consumer goods and/or services.

13. Defendant received Plaintiff's stop request on December 10, 2024, and acknowledged receipt of the request as shown below:




14. As demonstrated by the above screenshots, Defendant does not honor consumer requests to opt-out of text message solicitations. Indeed, Plaintiff attempted to opt-out of Defendant's text message solicitations by responding, but Defendant continued to text message Plaintiff.

15. Defendant sent at least one solicitation more than fifteen days after Plaintiff's initial opt-out request.

16. Plaintiff is the regular user of the telephone number that received the above telephonic calls.

17. Upon information and belief, Defendant maintains and/or has access to outbound transmission reports for all text messages sent advertising/promoting its services and goods. These reports show the dates, times, target telephone numbers, and content of each message sent to Plaintiff and the Class members.

18. To send the text messages, Defendant used a messaging platform (the "Platform"), which permitted Defendant to transmit blasts of text messages automatically and without any human involvement. The Platform automatically made a series of calls to Plaintiff's and the Class members' stored telephone numbers with no human involvement after the series of calls were initiated utilizing the Platform. Defendant's use of a generic text message (depicted above) further demonstrates that Defendant utilizes automated dialing systems to mass transmit solicitation texts to consumers.

19. The Platform has the capacity to select and dial numbers automatically from a list of numbers, which was in fact utilized by Defendant.

20. The Platform has the capacity to schedule the time and date for future transmission of text messages, which was in fact utilized by Defendant.

21. The Platform also has an auto-reply function that results in the automatic transmission of text messages.

22. Defendant would be able to send text messages to consumers without consent by utilizing a non-automated text messaging system.

23. Accordingly, it is not impossible for Defendant to comply with the FTSA in the context of transmitting text messages.

24. The burden and cost to Defendant of securing consent from consumers that complies with the FTSA is nominal.

25. Compliance with the FTSA will not result in Defendant having to cease its business operations.

26. Compliance with the FTSA will not result in Defendant having the alter the prices of any goods or services it provides in the marketplace. 41. Compliance with the FTSA will not force Defendant to seek regulatory approval from the State of Florida before undertaking any type of commercial transaction.

27. Defendant was not required to and did not need to utilize the Platform to send messages to Plaintiffs and the Class members. Instead, Defendant opted to use the Platform to maximize the reach of its text message advertisements at a nominal cost to Defendant.

28. Defendant would be able to conduct its business operations without sending automated text messages to consumers.

29. Defendant's failure to honor opt-out requests demonstrates that Defendant does not 1) maintain written policies and procedures regarding its text messaging marketing; (2) provide training to its personnel engaged in telemarketing; and/or (3) maintain a standalone do-not-call list.

30. Defendant's failure to (1) maintain the required written policies and procedures, (2) provide training to its personnel engaged in telemarketing, (3) maintain a standalone do-not-call list, and (4) honor consumer opt-out requests caused Plaintiff and

the class members harm as they continued to receive text message solicitations after asking for those messages to stop.

31. Plaintiff and the Class Members revoked any consent they may have previously provided to Defendant by replying with a "stop" or similar opt-out instruction in response to Defendant's text messages.

32. Plaintiff and the Class Members terminated any business relationship they may have previously had with Defendant by replying with a "stop" or similar opt-out instruction in response to Defendant's text messages.

33. Defendant's telephonic sales calls caused Plaintiff and the Class members harm, including statutory damages, inconvenience, invasion of privacy, aggravation, annoyance, and violation of their statutory privacy rights.

34. Defendant's text message spam caused Plaintiff and the Class members harm, including violations of their statutory rights, trespass, annoyance, nuisance, invasion of their privacy, and intrusion upon seclusion. Defendant's text messages also occupied storage space on Plaintiff's and the Class members' telephones.

35. Plaintiff alleges Defendant's violations were willful or knowing because Defendant allegedly continued sending promotional texts after STOP requests and unsubscribe confirmations.

## CLASS ALLEGATIONS

### PROPOSED CLASS

36. Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of Plaintiff and all others similarly situated.

37. Plaintiff brings this case on behalf of the Classes defined as follows:

> **<u>FTSA "STOP" Class</u>: All persons in Florida who, since July 1, 2021 through the date of class certification, received one or more text messages, from Defendant, regarding Defendant's goods or services, to said person's cellular telephone number, more than fifteen (15) days after communicating to Defendant that they did not wish to receive text messages by replying to the messages with a "stop" or similar opt-out instruction.**
>
> **<u>FTSA Autodialer Class</u>: All persons in Florida who, since July 1, 2021 through the date of class certification, received one or more text messages, from Defendant utilizing the Platform, regarding Defendant's goods or services, to said person's cellular telephone number, more than fifteen (15) days after communicating to Defendant that they did not wish to receive text messages by replying to the messages with a "stop" or similar opt-out instruction.**

38. Plaintiff reserves the right to modify the Class definitions as warranted as facts are learned in further investigation and discovery.

39. Defendant and its employees or agents are excluded from the Classes. Plaintiff does not know the number of members in each the Class but believes the Class members number in the several thousands, if not more.

<u>NUMEROSITY</u>

40. Based on Defendant's public Florida footprint, publicly reported sales volumes, publicly described loyalty-program membership, and mobile-number-based rewards and SMS program, Plaintiff reasonably believes that the Class numbers in the

thousands. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

41. The exact number and identities of the members of the Class are unknown at this time and can only be ascertained through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendant's call records.

<u>**COMMON QUESTIONS OF LAW AND FACT**</u>

42. There are numerous questions of law and fact common to members of the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the members of the Class are:

a. Whether Defendant initiated telephonic sales calls to Plaintiff and the Class members;
b. Whether Defendant continued to send text message solicitations after opt-out requests;
c. Whether Defendants maintain an internal do-not-call list and instruct their employees on how to use the list; and
d. Whether Defendant is liable for damages, and the amount of such damages.

43. The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendant routinely transmits calls to telephone numbers assigned to cellular telephone services is accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

<u>**TYPICALITY**</u>

44. Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

<u>**PROTECTING THE INTERESTS OF THE CLASS MEMBERS**</u>

45. Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class, and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

**<u>PROCEEDING VIA CLASS ACTION IS SUPERIOR AND ADVISABLE</u>**

46. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

47. The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

**COUNT I**
**<u>VIOLATION OF FLA. STAT. § 501.059(5)</u>**
**(On Behalf of FTSA "STOP" Class)**

48. Plaintiff re-alleges and incorporates the allegations set forth in paragraphs 1 through 47 as if fully set forth herein.

49. In pertinent part, the FTSA provides:

> A telephone solicitor or other person may not initiate an outbound telephone call, text message, or voicemail transmission to a consumer, business, or donor or potential donor who has previously communicated to the telephone solicitor or other person that he or she does not wish to receive an outbound telephone call, text message, or voicemail transmission:
>
> (a) Made by or on behalf of the seller whose goods or services are being offered; or
>
> (b) Made on behalf of a charitable organization for which a charitable contribution is being solicited.

Fla. Stat. § 501.059(5).

50. "'Telephone solicitor' means a natural person, firm, organization, partnership, association, or corporation, or a subsidiary or affiliate thereof, doing business in this state, who makes or causes to be made a telephonic sales call, including, but not limited to, calls made by use of automated dialing or recorded message devices." Fla. Stat. § 501.059(1)(i).

51. Defendant is a telephone solicitor as defined under the FTSA.

52. Plaintiff and the Class Members are consumers who received one or more text messages regarding Defendant's goods and services after they communicated to Defendant that they did not wish to receive Defendant's text messages.

53. Plaintiff and the Class members made requests to Defendant not to receive texts from Defendant.

54. Defendant continued to text message Plaintiff and the Class Members to harass them into making purchases from Defendant.

55. Defendant failed to honor Plaintiff and the Class members' opt-out requests.

56. As a result of Defendant's conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff and Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation.

57. Defendant willfully or knowingly violated the FTSA by continuing to text message Plaintiff and the Class members after they asked Defendant to "stop" its solicitations.

58. Accordingly, pursuant to § 501.059(10)(b), Plaintiff, on behalf of himself and the Class members, seeks $1,500 in damages for each willful and knowing violation of the FTSA.

59. Plaintiff requests for this Court to enter an Order granting the relief outlined in the Prayer for Relief below.

**COUNT II**
**<u>VIOLATION OF FLA. STAT. § 501.059(8)(a)</u>**
**(On Behalf of FTSA Autodialer Class)**

60. Plaintiff re-alleges and incorporates the allegations set forth in paragraphs 1 through 47 as if fully set forth herein.

61. It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of

telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

62. A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

63. Plaintiff and the Class members revoked any consent they may have provided Defendant by responding with a "stop" or similar opt-out instruction.

64. In violation of the FTSA, Defendant made and/or knowingly allowed telephonic sales calls (texts) to be made to Plaintiff and the Class members without Plaintiff's and the Class members' prior express written consent.

65. Defendant made and/or knowingly allowed the telephonic sales calls to Plaintiff and the Class members to be made utilizing an automated system for the selection and dialing of telephone numbers.

66. As a result of Defendant's conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff and Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation.

67. Defendant willfully or knowingly violated the FTSA by continuing to text message Plaintiff and the Class members after they asked Defendant to "stop" its solicitations.

68. Accordingly, pursuant to § 501.059(10)(b), Plaintiff, on behalf of himself and the Class members, seeks $1,500 in damages for each willful and knowing violation of the FTSA.

69. Plaintiff requests for this Court to enter an Order granting the relief outlined in the Prayer for Relief below.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Classes as defined above, and appointing Plaintiff as the representative of the Classes and Plaintiff's counsel as Class Counsel;

b) An award of statutory damages for Plaintiff and each member of the Classes as applicable under the FTSA;

c) An award of statutory treble damages for Plaintiff and each member of the Classes as applicable under the FTSA;

d) An order declaring that Defendant's actions, as set out above, violate the FTSA;

e) Such further and other relief as the Court deems necessary.

## JURY DEMAND

Plaintiff hereby demand a trial by jury.

Dated: July 16, 2026

Respectfully Submitted,

**EISENBAND LAW P.A.**

*/s/ Michael Eisenband*

Michael Eisenband
Florida Bar No. 94235
515 E. Las Olas Boulevard, Suite 1301
Ft. Lauderdale, Florida 33301
Email: MEisenband@Eisenbandlaw.com
Telephone: 954.732.2792
Attorney for Plaintiff

By: */s/ Manuel Hiraldo*

**HIRALDO P.A.**
Manuel S. Hiraldo
Florida Bar No. 030380
246 Shore Court
Lauderdale-by-the-Sea, FL 33308
Email: mhiraldo@hiraldolaw.com
Telephone: 305.336.7466
**LEAD COUNSEL**