**KJC LAW GROUP, A.P.C.**
Kevin J. Cole (SBN 321555)
*kevin@kjclawgroup.com*
9701 Wilshire Blvd., Suite 1000
Beverly Hills, CA 90212
Telephone: (310) 861-7797

**PARONICH LAW, P.C.**
Anthony I. Paronich (*Pro Hac Vice*)
*anthony@paronichlaw.com*
Alex Jilizian (SBN 362307)
*alex@paronichlaw.com*
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone: (617) 485-0018

*Attorneys for Plaintiff*
*Robert Freund*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ROBERT FREUND, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GROUPON, INC.,<br><br>Defendant. | Case No. 3:26-cv-05733-JSC<br><br>**PLAINTIFF's OPPOSITION TO DEFENDANT GROUPON, INC.'s MOTION TO TRANSFER VENUE OR, IN THE ALTERNATIVE, TO COMPEL ARBITRATION**<br><br>Date: October 15, 2026<br>Time: 10:00 a.m.<br>Courtroom: 8, 19th Floor |

# TABLE OF CONTENTS


Page

I. INTRODUCTION....................6

II. RELEVANT BACKGROUND....................7

A. The Case Concerns Marketing Texts Sent After Groupon Confirmed Freund's Opt-Out. ....................7

B. Groupon Relies On A Sign-In-Wrap Promotional Screen Rather Than a Conventional Clickwrap....................8

C. Groupon Then Changed the Terms Before the Texts At Issue. ....................8

D. Plaintiff Filed First; Groupon's Other Actions Were Filed Later....................9

III. LEGAL STANDARD ....................9

IV. ARGUMENT....................10

A. Groupon Has Not Carried Its Burden Of Proving Assent to the Online Terms....................10

1. *Berman*, *Chabolla*, and *Godun* Require Conspicuous Notice and Unambiguous Assent. ....................10

2. Groupon's Discount Pop-Up Does Not Contain Reasonably Conspicuous Notice of the Terms and Conditions Containing the Purportedly Applicable Agreements....................11

3. Groupon's Historical 2011 and 2015 Evidence Does Not Cure the 2026 Formation Problem. ....................14

B. Groupon Cannot Bind Plaintiff to the April 17 Terms Merely by Posting Them....................15

C. Because Groupon Has Not Proven a Binding Forum-Selection Agreement, *Atlantic Marine* Does Not Control....................15

D. Under the Ordinary Section 1404(A) Analysis, Transfer is Not Warranted.16

1. This Is The First-Filed Action....................17

2. Groupon's Own Congestion Statistics Do Not Support Transfer.......17

3. California Has a Direct Local Interest in Plaintiff's Claim. ............... 17

E. The Alternative Motion To Compel Arbitration Should Be Denied. ........... 18

1. The FAA's Policy Favoring Arbitration Does Not Relieve Groupon Of Proving Contract Formation. ........................................................ 18

2. At Minimum, Any Genuine Dispute Over Formation Must Be Resolved Before Arbitration is Ordered. ........................................... 18

F. Groupon's Unilateral Modification Provision Independently Undermines Its Attempt to Treat the April Terms as the Parties' Contract. .......................... 19

V. CONCLUSION ................................................................................................ 19

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Atlantic Marine Construction Co. v. U.S. District Court*
571 U.S. 49 (2013) .... 10, 15, 16

*Berman v. Freedom Financial Network, LLC*
30 F.4th 849 (9th Cir. 2022) .... passim

*Cedars-Sinai Med. Ctr. v. Shalala*
125 F.3d 765 (9th Cir. 1997) .... 17

*Chabolla v. ClassPass Inc.*
129 F.4th 1147 (9th Cir. 2025) .... 6, 10, 18

*Dawson v. Target Corp.*
2025 WL 1651940 (N.D. Cal. June 11, 2025) .... 14, 18

*Ferrell v. SnapCommerce Holdings, Inc.*
2025 WL 3280992 (N.D. Cal. Nov. 25, 2025) .... 6, 12, 13, 18

*Godun v. JustAnswer, LLC*
135 F.4th 699 (9th Cir. 2025) .... 6, 10, 13, 18

*Granite Rock Co. v. International Brotherhood of Teamsters*
561 U.S. 287 (2010) .... 18

*Hansen v. LMB Mortg. Servs., Inc*
1 F.4th 667 (9th Cir. 2021) .... 9, 18

*Jones v. GNC Franchising, Inc.*
211 F.3d 495 (9th Cir. 2000) .... 16

*Knutson v. Sirius XM Radio Inc.*
771 F.3d 559 (9th Cir. 2014) .... 9, 18

*Norcia v. Samsung Telecomms. Am., LLC*
845 F.3d 1279 (9th Cir. 2017) .... 9, 18

*Pacesetter Sys., Inc. v. Medtronic, Inc.*
678 F.2d 93 (9th Cir. 1982) .... 17

*Snow v. Eventbrite, Inc.*
2020 WL 6135990, (N.D. Cal. Oct. 19, 2020) .......... 14

*Stover v. Experian Holdings, Inc.*
978 F.3d 1082 (9th Cir. 2020) .......... 7, 15, 19

*Tejon v. Zeus Networks, LLC*
174 F.4th 1322 (11th Cir. 2026) .......... 12

*Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*
925 F.2d 1136 (9th Cir. 1991) .......... 9, 18

*Valiente v. Nexgen Glob., LLC*
2025 U.S. App. LEXIS 29465 (11th Cir. Nov. 10, 2025) .......... 12, 13

*Volt Info. Scis., Inc. v. Board of Trs. of Leland Stanford Jr. Univ.*
489 U.S. 468 (1989) .......... 9

*Whalen v. NBA Properties, Inc*
2025 WL 1948591 (N.D. Cal July 16, 2025) .......... 16

**State Cases**

*Peleg v. Neiman Marcus Group, Inc.*
204 Cal. App. 4th 1425 (2012) .......... 19

*Peng v. First Republic Bank*
219 Cal. App. 4th 1462 (2013) .......... 19

**Federal Statutes**

28 U.S.C. § 1404(a) .......... 7, 10, 16, 18

9 U.S.C. § 4 .......... 9, 18

# I. INTRODUCTION

Groupon asks the Court to do two extraordinary things on the strength of a single promotional pop-up: first, treat that pop-up as proof that Plaintiff Robert Freund entered a binding contract selecting Illinois as the exclusive forum for any litigation; and second, if the Court does not transfer the case, compel Freund to arbitrate his federal TCPA claims individually. The motion should be denied because Groupon has not carried the threshold burden that precedes both requests: proving the formation of the contract it seeks to enforce. The Ninth Circuit has recently (and repeatedly) tightened the rules governing online "sign-in wrap" agreements. Under *Berman v. Freedom Financial Network, LLC*, 30 F.4th 849 (9th Cir. 2022), a website operator must prove both reasonably conspicuous notice and an act that unambiguously manifests assent. *Chabolla v. ClassPass Inc.*, 129 F.4th 1147 (9th Cir. 2025), and *Godun v. JustAnswer, LLC*, 135 F.4th 699 (9th Cir. 2025), confirm that courts must scrutinize the actual interface, the size and presentation of the notice, the prominence of the hyperlink, and the transactional context. The operator bears the burden; the federal policy favoring arbitration does not substitute for assent.

That law matters here. Groupon's promotional screen is dominated by a large "Get $10 off $20" headline and a dark call-to-action button. The alleged contractual disclosure is buried in a dense block of materially smaller text. Groupon relies on the fact that the phrase "Terms (incl. arbitration)" is linked, but *Berman* holds that a hyperlink itself must be readily apparent and that even underlining alone may be insufficient when the surrounding design does not call attention to the proposed contract. 30 F.4th at 856-58. And a recent TCPA decision from this District is remarkably close. In *Ferrell v. SnapCommerce Holdings, Inc.*, No. 25-cv-03160, 2025 WL 3280992 *1–*3 (N.D. Cal. Nov. 25, 2025), this Court denied arbitration where the site stated "By clicking 'Send code' you agree to our [] Terms of Use," because the notice was in small gray font and the hyperlink was merely underlined rather than otherwise set apart. Groupon's interface suffers from the same central defect.

Groupon's proof has a second problem. It alternates between the February 12, 2026 Terms allegedly linked on March 29 and a different set of Terms dated April 17, 2026 that Groupon says were "in effect" when the challenged June texts were sent. But Groupon offers no evidence that Freund received notice of, saw, or assented to the April revision. *Stover v. Experian Holdings, Inc.*, 978 F.3d 1082, 1086–87 (9th Cir. 2020), squarely rejects the proposition that posting revised online terms, standing alone, binds a consumer to new terms. Indeed, *Stover* confirms that "notice … is the touchstone for assent to a contract." *Id.* at 1086.

The transfer request therefore fails at the onset because only a valid and applicable forum-selection clause can support such a request; it does not allow transfer first and contract formation later. And absent an enforceable forum clause, the ordinary Section 1404(a) factors favor this matter remaining in this District since Plaintiff resides in this forum, the alleged unwanted texts were received here, and this action was filed first. The alternative arbitration request fails for the same contractual formation reason as the transfer request. At minimum, the record presents a genuine dispute over the making of an arbitration agreement that cannot be resolved against Plaintiff on a paper record. The Court should deny the motion in its entirety.

## II. RELEVANT BACKGROUND

### A. The Case Concerns Marketing Texts Sent After Groupon Confirmed Freund's Opt-Out.

Groupon's own evidence confirms that it sent unwanted text messages after Plaintiff's unambiguous revocation of consent to such messages. On March 29, 2026, Freund enrolled in Groupon's promotional SMS program. Fifteen minutes later, that number sent "STOP." Groupon immediately responded: "You are unsubscribed from messaging. No more messages will be sent." Sega Decl. ¶¶ 5–9. Groupon nevertheless acknowledges that this lawsuit arises from Freund's allegation that additional promotional text messages were sent in June 2026 after the opt-out. Mot. at 4; Compl. ¶¶ 18–19.

Freund's declaration sets out, in his own account, the sequence and content of the March 29, 2026 opt-in and opt-out messages and the June 2026 messages at issue, including the STOP messages he sent and when he sent them. (Freund Decl. ¶¶ 3, 5.)

Groupon also asserts a policy of promptly suppressing further messages after a consumer opts out. Conner Decl. ¶ 9. The merits question is therefore straightforward: whether the post-opt-out texts violated the TCPA and its implementing regulations. That federal statutory claim was filed in this Court on June 12, 2026.

### B. <u>Groupon Relies On A Sign-In-Wrap Promotional Screen Rather Than a Conventional Clickwrap.</u>

Groupon does not contend Freund checked an "I Agree" box or clicked a button labeled "Agree to Terms." Instead, it relies on a promotional pop-up offering a $10 discount. The screen's visual layout is instructive and without any real dispute: a large green headline reads "Get $10 off $20," a subheading advertises a "$20 local deal," and the largest actionable element is a dark button inviting the user to obtain the discount. Sega Decl. ¶ 3. The alleged contractual language appears in a dense block of substantially smaller text immediately above that button. It states, among other things, that by clicking the button the user agrees to receive marketing messages and "also agree[s] to our Terms (incl. arbitration) & Privacy Policy." *Id.*

Groupon's vendor that operated the text messages, Attentive, declares that the "Terms" link on March 29 pointed to an Attentive short URL, https://attnl.tv/t/Gv9/r/US. *See* Sega Decl. ¶ 4. Groupon's legal employee then states that this short URL "goes to Groupon's then-current Terms of Use," which he says were the February 12, 2026 Terms. Conner Decl. ¶ 16. No technical redirect record, server log, or screenshot of what a user actually saw after following that short link is supplied.

### C. <u>Groupon Then Changed the Terms Before the Texts At Issue.</u>

Groupon admits the Terms were changed on April 17, 2026, after the March 29 enrollment. Conner Decl. ¶¶ 16–18. Groupon calls those April Terms the version "in effect" when the challenged June texts were sent, and its motion relies on the April Terms

in describing the operative definition of "Dispute" and the forum-selection clause. Mot. at 16–17. Yet Groupon does not identify any email, in-app notice, account notification, or other communication informing Plaintiff that the Terms had changed, nor any post-April act by Plaintiff manifesting assent to the revised Terms.

Freund's declaration further confirms that he never received an email, in-app notice, account notification, or any other communication from Groupon informing him that the Terms had changed after March 29, 2026, and that he did not revisit or re-review the Terms of Use after that date. (Freund Decl. ¶ 6.)

### D. Plaintiff Filed First; Groupon's Other Actions Were Filed Later.

Plaintiff filed this action on June 12, 2026. Groupon admits the putatively related Tompkins action in the Northern District of Illinois was filed on June 30, 2026, less than three weeks later. Mot. at 9. The Texas and Florida cases cited by Groupon were filed still later, on July 10 and July 16. *Id.* at 9 n.2. Thus, every supposedly duplicative action on which Groupon relies postdates this one.

## III. LEGAL STANDARD

The party seeking to enforce an arbitration agreement bears the burden of proving that an agreement to arbitrate exists. *Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017); *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014). "Arbitration under the [FAA] is a matter of consent," and the FAA does not require arbitration where the parties never agreed to it. *Volt Info. Scis., Inc. v. Board of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 478–79 (1989). Courts resolving contract formation on a motion to compel use a summary-judgment-like standard, giving the nonmovant the benefit of reasonable doubts and inferences. *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021); *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1141 (9th Cir. 1991) (citation omitted). If "the making of the arbitration agreement" is genuinely in issue, Section 4 of the FAA requires that issue to be tried rather than resolved against the resisting party. 9 U.S.C. § 4.

The same threshold formation inquiry applies to Groupon's forum-selection theory. *Atlantic Marine Construction Co. v. U.S. District Court*, 571 U.S. 49 (2013), alters the Section 1404(a) calculus only when the parties have a valid forum-selection agreement. A defendant cannot invoke the special *Atlantic Marine* framework until it proves that the clause on which it relies became part of a contract with the plaintiff. *See Atlantic Marine,* 571 U.S. 49 at 62, n.5 ("Our analysis presupposes a contractually valid forum-selection clause.").

## IV. ARGUMENT

### A. Groupon Has Not Carried Its Burden Of Proving Assent to the Online Terms.

#### 1. *Berman*, *Chabolla*, and *Godun* Require Conspicuous Notice and Unambiguous Assent.

For a sign-in-wrap agreement, "an enforceable contract will be found based on an inquiry notice theory only if: (1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Berman*, 30 F.4th at 856. Both requirements must be satisfied. *Berman* emphasizes that conspicuousness is visual and contextual. The notice must be presented in a font size and format that a reasonably prudent Internet user would actually see. *Id.* at 856–57. Important terms cannot be buried in fine print while larger surrounding elements naturally direct attention elsewhere. *Id.* at 856-57. And where terms are disclosed by hyperlink, the existence of the hyperlink must itself be readily apparent. *Id.* at 857.

The Ninth Circuit has since reaffirmed and applied that test strictly. In *Chabolla*, the court held that a consumer was not bound even after navigating multiple registration screens referencing Terms of Use; the court assessed each screen's design and whether the action demanded of the user unambiguously conveyed assent. 129 F.4th at 1154–60. *Godun* likewise held that no contract formed where some users saw inconspicuous advisals and others were not explicitly told what action would constitute assent. 135 F.4th at 706–

13. These cases confirm that courts do not ask whether a sophisticated user could eventually *find* the terms; they ask whether the interface itself supplied conspicuous notice and an unambiguous manifestation of agreement. That did not happen here.

**2. Groupon's Discount Pop-Up Does Not Contain Reasonably Conspicuous Notice of the Terms and Conditions Containing the Purportedly Applicable Agreements.**

Groupon's screen does not resemble a conventional clickwrap. It contains no checkbox and no "I Agree" control. It is a marketing promotion whose dominant elements advertise the discount, while the alleged contract notice is compressed into the smallest block of text on the screen. That presentation matters under *Berman*. Freund himself did not notice or read the "Terms (incl. arbitration)" disclosure before clicking the button, and did not understand himself to be agreeing to arbitration or to litigate exclusively in Illinois. (Freund Decl. ¶ 4.) He encountered this screen on his phone, where the disclosure text appeared even smaller and less legible than in the static exhibit Groupon submits. (Freund



Decl. ¶ 4.) *Ferrell* is especially instructive because it involved a TCPA action and nearly the same online mechanism. There, the site told users: "By clicking 'Send code' you agree to our Super.com Terms of Use." *Ferrell*, No. 4:25-cv-03160-JST (ECF No. 34), 2025 WL 3280992, at 2. The "Terms of Use" words were underlined and hyperlinked:

Yet Judge Tigar denied arbitration because the notice appeared in very small gray text, was less prominent than the principal page elements, and the hyperlink was not otherwise distinguished. *Id.* at 4–7. Applying *Berman*, the court held the operator had not provided reasonably conspicuous notice and therefore had not shown contract formation. *Id.* at 7.

That reasoning fits Groupon's screen. Groupon chose a high-impact marketing design for the offer and a dramatically lower-impact design for the alleged contract. The promotional headline and call-to-action button are large and visually dominant. The assent language is dense and materially smaller. And although Groupon emphasizes that "Terms (incl. arbitration)" was linked, *Berman* explains that even underlining may not be enough where the link is not otherwise visually differentiated. 30 F.4th at 857.

Nor is any single design element dispositive on its own. Courts applying *Berman*'s conspicuousness inquiry evaluate the notice's location, its proximity to the button the user must click, and its font size, format, and color together. *Tejon v. Zeus Networks, LLC*, 174 F.4th 1322, 1327 (11th Cir. 2026). Even where a hyperlink sits near an action button, the absence of a contrasting color independently undermines conspicuousness: "customary design elements that signal the existence of a hyperlink, such as 'the use of a contrasting font color (typically blue) and the use of all capital letters,' could indicate to users that the text is not ordinary but instead provides a clickable pathway to another page." *Id.* (quoting *Berman*, 30 F.4th at 857) (citation omitted); *see also Valiente v. Nexgen Glob., LLC*, No. 23-13308, 2025 U.S. App. LEXIS 29465, at *15-16 (11th Cir. Nov. 10, 2025) ("In addition, the hyperlink was not in a contrasting color....it was in white coloring and a small font and did not have the hallmarks of a hyperlink—i.e., if a consumer did not happen to hover their cursor over it, they might not know it is a link because the text was not 'blue or underlined

or highlighted in a way [one might] expect from hyperlinked text.'") (quoting *Valiente v. Nexgen Glob., LLC*, No. 22-cv-22480-ALTMAN/Reid, 2023 U.S. Dist. LEXIS 169829 (S.D. Fla. Sep. 22, 2023)) (citation omitted). Here, the underlined words "Terms (incl. arbitration)" appear in the same dark, non-contrasting color as the surrounding disclosure text, which supports the notion that a reasonable user lacks information to distinguish them from ordinary prose.

Indeed, a side by side comparison shows the similarities between the rejected *Berman* screen and the instant screen Groupon uses: *Ferrell* applied precisely that principle to reject an underlined hyperlink embedded in small text. And in *Godun,* the court rejected a finding of contractual assent where the plaintiffs were confronted with many screens that contained a similar visual scheme as is present here, where the promotional marketing elements dominate the landscape while the terms and conditions elements are minimized:

**Godun**




**Groupon**




*See Godun,* 35 F.4th at 704 -706 (showing various landing screens encountered by plaintiffs).

### 3. Groupon's Historical 2011 and 2015 Evidence Does Not Cure the 2026 Formation Problem.

Groupon also relies on Plaintiff's 2011 account creation and purchases in 2012 and 2015. But Groupon does not attach the screen Plaintiff actually saw on any of those dates. Instead, Groupon's declarant states that Plaintiff "would have" checked a box in 2011 and "would have" encountered certain checkout language in 2012 and 2015. *See* Conner Decl. ¶¶ 11–13. That is inferential proof of the same kind courts in this District have treated cautiously. Freund similarly declares that he has no recollection of ever affirmatively reviewing or agreeing to an arbitration or forum-selection provision when creating his account in 2011 or during any purchase in 2012 or 2015. (Freund Decl. ¶ 7.)

In *Dawson v. Target Corp.*, No. 3:24-cv-08167-AMO, 2025 WL 1651940, at *3–5 (N.D. Cal. June 11, 2025), for example, the defendant's exemplar screenflows and database inferences did not carry the burden of proving what version of terms the plaintiff actually saw at the relevant time. The district court denied the motion to compel on this basis. On appeal, the Ninth Circuit held that there was a dispute of material fact as to what terms the plaintiff encountered and remanded to the district court to make the determination of whether plaintiff signed into his account on defendant's systems while the arbitration agreement was in effect and which version of the check-out page containing terms was encountered at the time of purchase. *See Dawson v. Target Corp*., No. 25-4061, 2026 WL 2364491, at *2 (9th Cir. Aug. 14, 2026). In *Snow v. Eventbrite, Inc.*, this Court similarly held that exemplary screenshots do not carry the movant's burden unless it can show what the agreements looked like when the plaintiff would actually have encountered them. No. 3:20-cv-03698-WHO, 2020 WL 6135990, at *6–8 (N.D. Cal. Oct. 19, 2020)

Those cases do not negate Groupon's March 2026 evidence, but they do defeat Groupon's effort to pile unsupported historical inferences on top of the March pop-up and describe Plaintiff as having agreed to the terms at issue "multiple times."

**B. <u>Groupon Cannot Bind Plaintiff to the April 17 Terms Merely by Posting Them.</u>**

Even if the Court concluded that the March 29 screen formed an agreement incorporating the February 12 Terms, Groupon still has not established that the April 17 revision became binding. Groupon's motion repeatedly treats the April Terms as operative because they were "in effect" when the June texts were sent. Mot. at 3, 16. But a company's declaration that revised terms are "in effect" is not proof of mutual assent. *Stover, supra,* is controlling. There, the Ninth Circuit held that a change-of-terms provision does not eliminate the basic requirement of notice of the changes to the terms: "in order for changes in terms to be binding pursuant to a change-of-terms provision in the original contract, both parties to the contract—not just the drafting party—must have notice of the change in contract terms." 978 F.3d at 1086. Notice remains "the touchstone for assent." *Id.* at 1086–87.

Groupon, however, offers no evidence of notice. There is no email to Plaintiff announcing revised Terms, no account message, no text linking the revision, and no evidence that Plaintiff visited the Terms page after April 17. Groupon's declarant, Conner, merely says Groupon changed the Terms. Conner Decl. ¶¶ 17-18. That is insufficient under *Stover*. The point is not academic. Groupon uses the April Terms to define the scope of "Disputes," to invoke the current mass-arbitration procedures, and to frame its forum-selection request. If Groupon instead contends the February Terms govern, the Court should analyze only those Terms and reject Groupon's effort to rely on later provisions it never proved Plaintiff accepted. What Groupon cannot do is treat unilateral posting as a substitute for notice and contract formation.

**C. <u>Because Groupon Has Not Proven a Binding Forum-Selection Agreement, *Atlantic Marine* Does Not Control.</u>**

Groupon begins its transfer analysis from the premise that the forum-selection clause is valid and binding and then invokes *Atlantic Marine's* special presumption. That reverses the analysis. *Atlantic Marine* presupposes a valid agreement selecting the forum at the

onset. 571 U.S. at 62–63. The Court, therefore, must first determine whether Plaintiff agreed to the Terms containing the clause. Here, that threshold finding is contested for the reasons above. The forum clause sits inside the same online Terms as the arbitration clause and depends on the same asserted assent. If the March interface did not provide reasonably conspicuous notice, no forum-selection clause was formed. If the April Terms were not validly adopted, Groupon cannot rely on that version. The Court therefore should not apply *Atlantic Marine's* contract-enforcement framework before deciding whether the asserted contract exists.

*Whalen v. NBA Properties, Inc.,* 2025 WL 1948591 (N.D. Cal July 16, 2025), again, illustrates the proper order. The court there first found an agreement formed through an interface with underlined hyperlinks immediately above an "Agree and Subscribe" button before enforcing the forum-selection clause. 2025 WL 1948591, at *4–5. Groupon's interface is materially weaker, and its modification proof weaker still.

### D. <u>Under the Ordinary Section 1404(A) Analysis, Transfer is Not Warranted.</u>

Without a controlling forum-selection clause, Groupon bears the ordinary burden under 28 U.S.C. § 1404(a). Relevant considerations include the plaintiff's choice of forum, the parties' contacts with the forum, contacts relating to the claim, convenience of the parties and witnesses, access to proof, and the interests of justice. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000). Those factors favor keeping this action here.

Plaintiff chose the forum in which he resides and allegedly received the unwanted text messages. The statutory injury—receipt of post-opt-out communications—occurred in California. Groupon deliberately markets and sells to California consumers. By contrast, Illinois's principal connection is Groupon's corporate headquarters. Moving the action from the Plaintiff's home forum to the Defendant's home forum would principally shift inconvenience from one side to the other.

**1. This Is The First-Filed Action.**

Groupon invokes later-filed cases as an efficiency rationale, but the chronology points the opposite way. Plaintiff filed on June 12. *Tompkins* was filed June 30. The Texas and Florida actions followed in July. Mot. at 9 & n.2. Under the Ninth Circuit's first-to-file rule, "when cases involving the same parties and issues have been filed in two different districts, the second district court has discretion to transfer, stay, or dismiss the second case." *Cedars-Sinai Med. Ctr. v. Shalala*, 125 F.3d 765, 769 (9th Cir. 1997); *see also Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 95–96 (9th Cir. 1982). Groupon cannot transform a later Illinois filing into a reason to uproot the action that came first.

**2. Groupon's Own Congestion Statistics Do Not Support Transfer.**

Groupon says this District is substantially more congested, but its exhibits show a mixed picture. As of June 30, 2026, the Northern District of California reported 19,343 pending cases, 799 weighted filings per judgeship, a seven-month median time from filing to civil disposition, and 29.9 months from filing to civil trial. Wahlquist Decl., Ex. I. The Northern District of Illinois reported 27,085 pending cases, 823 weighted filings per judgeship, five months to disposition, and 48.4 months to civil trial. *Id.*, Ex. J. Illinois therefore had approximately 7,700 more pending cases, higher weighted filings per judge, and an expected civil-trial timeline more than eighteen months longer. Those figures do not establish that Illinois is the meaningfully more efficient forum.

**3. California Has a Direct Local Interest in Plaintiff's Claim.**

California has an obvious local interest in a resident's claim that marketing communications were sent to him here after he opted out. Groupon's nationwide-class allegations do not erase the named plaintiff's concrete California injury. Nor does Groupon's Illinois headquarters make a consumer claim received in California uniquely Illinois-centered. At most, both States have an interest—but that is not a reason to override Plaintiff's home forum under ordinary Section 1404 principles.

Groupon candidly adds that transfer would place the case in the Seventh Circuit, where it believes current circuit precedent is less favorable to Plaintiff's TCPA theory.

Mot. at 12. Whatever the merits of that choice-of-law issue, a defendant's preference for a circuit whose substantive federal precedent it regards as more favorable is not an independent convenience factor under Section 1404(a).

### E. <u>The Alternative Motion To Compel Arbitration Should Be Denied.</u>

#### 1. The FAA's Policy Favoring Arbitration Does Not Relieve Groupon Of Proving Contract Formation.

Groupon relies heavily on the federal policy favoring arbitration, but that policy applies ***only after*** a court identifies an agreement to arbitrate. *Granite Rock Co. v. International Brotherhood of Teamsters*, 561 U.S. 287, 302–03 (2010). The Ninth Circuit repeatedly distinguishes scope from formation: doubts may be resolved in favor of arbitration when construing the scope of an existing agreement, but courts do not presume an agreement into existence. *See Norcia*, 845 F.3d at 1290–91; *Knutson*, 771 F.3d at 565. Here, the threshold formation defect is dispositive. *Berman*, *Chabolla*, *Godun*, and *Ferrell* all reject the notion that clicking a transactional button automatically binds a consumer merely because fine-print terms appear somewhere nearby. Groupon chose a sign-in-wrap design rather than an affirmative clickwrap. It therefore bears the consequences of that design choice.

#### 2. At Minimum, Any Genuine Dispute Over Formation Must Be Resolved Before Arbitration is Ordered.

If the Court concludes the existing record presents competing reasonable inferences about the March 29 interface or the operative Terms, it still cannot simply resolve those disputes against Freund. Under *Hansen* and *Three Valleys*, the Court applies a summary-judgment-like standard and gives the nonmovant the benefit of reasonable inferences. *Hansen*, 1 F.4th at 670; *Three Valleys*, 925 F.2d at 1141. And Section 4 commands a trial where "the making of the arbitration agreement" is genuinely in issue. 9 U.S.C. § 4.

That procedure is especially appropriate if Groupon attempts on reply to supplement the current record with new technical evidence about the Attentive redirect, new screenshots, or new evidence of notice of the April Terms. *Dawson* refused to allow a

movant to cure a formation gap through new reply evidence. 2025 WL 1651940, at *4–5. Groupon should not be permitted to do so here either.

### F. Groupon's Unilateral Modification Provision Independently Undermines Its Attempt to Treat the April Terms as the Parties' Contract.

California allows parties to include provisions allowing prospective modification of terms in their contracts; however, these provisions are limited to good-faith, reasonable modifications, and courts distinguish such provisions from unduly broad and illusory provisions that attempt to apply wholesale to prospective claims. S*ee Peleg v. Neiman Marcus Group, Inc.*, 204 Cal. App. 4th 1425, 1464–65 (2012); *Peng v. First Republic Bank*, 219 Cal. App. 4th 1462, 1473–74 (2013).

The Court need not decide whether Groupon's clause is independently illusory to deny this motion. *Stover* provides the narrower and dispositive point: Groupon cannot prove the April revision became binding without proof of notice. But the breadth of Groupon's modification theory is another reason not to accept its assertion that whatever Terms it posts automatically become the parties' operative contract.

## V. CONCLUSION

For all these reasons, the Court should deny Defendant Groupon, Inc.'s Motion to Transfer Venue or, in the Alternative, to Compel Arbitration.

DATED: September 14, 2026

Respectfully Submitted,

**KJC LAW GROUP, A.P.C.**

By: */s/ Kevin J. Cole*
Kevin J. Cole, Esq.

**PARONICH LAW, P.C.**

By: */s/ Anthony I. Paronich*
Anthony I. Paronich, Esq.
*Attorneys for Plaintiff Robert Freund*

**CERTIFICATE OF SERVICE**

I certify that on September 14, 2026, I electronically filed the foregoing document(s) with the Court's CM/ECF system, and that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/ Kevin J. Cole*
Kevin J. Cole