**KELLEY DRYE & WARREN LLP**
Becca Wahlquist (SBN 215948)
350 South Grand Avenue, Suite 3800
Los Angeles, CA 90071
Telephone: (213) 547-4916
Facsimile: (213) 547-4901
bwahlquist@kelleydrye.com

*Counsel for Defendant Groupon, Inc.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **ROBERT FREUND**, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**GROUPON, INC.**,<br><br>Defendant. | Case No. 3:26-cv-05733-JSC<br><br>[Assigned to Hon. Jacqueline Scott Corley]<br><br>**REPLY IN SUPPORT OF DEFENDANT GROUPON, INC.'S MOTION TO TRANSFER VENUE, OR, IN THE ALTERNATIVE, TO COMPEL ARBITRATION**<br><br>Hearing Date: October 15, 2026<br>Hearing Time: 10:00 a.m.<br>Hearing Place: Courtroom 8, 19th Floor |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ....... 1

II. THE COURT SHOULD ENFORCE THE FORUM-SELECTION CLAUSE AND TRANSFER THIS ACTION TO THE NORTHERN DISTRICT OF ILLINOIS ....... 2

- A. The Account-Creation and Voucher-Purchase Processes Provided Reasonably Conspicuous Notice of the Terms ....... 3
- B. The March 2026 SMS Enrollment Screen Also Provided Reasonably Conspicuous Notice ....... 5
- C. Plaintiff's Lack of Recollection Is Legally Irrelevant ....... 7
- D. Plaintiff Concedes That the Forum-Selection Clause Encompasses His Claim ....... 8
- E. Plaintiff is Bound to the April 17 Terms, Which In Any Case Contain the Same Forum-Selection Clause as the February 12 Terms. ....... 9
- F. Plaintiff Does Not Satisfy the "Heavy Burden" Standard for Invalidating a Forum-Selection Clause ....... 10
- G. Plaintiff Did Not Show the Exceptional Circumstances Necessary to Avoid the Forum-Selection Clause ....... 10

III. ALTERNATIVELY, THE COURT SHOULD COMPEL ARBITRATION ....... 13

IV. CONCLUSION ....... 13

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Al-Thani v. Wells Fargo & Co.*,
No. 4:08-cv-01745, 2009 WL 55442 (N.D. Cal. Jan. 7, 2009) .......... 8

*Alba v. Harbor Freight Tools USA, Inc.*,
No. 5:26-cv-01069, 2026 WL 2161637 (N.D. Cal. July 27, 2026) .......... 8, 12

*Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*,
571 U.S. 49 (2013) .......... 10, 11

*Beltran v. Nationstar Mortg. LLC*,
No. 3:25-cv-04412-JSC, 2026 WL 637337 (N.D. Cal. Mar. 6, 2026) .......... 2, 4, 11, 12

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022) .......... 2, 5

*Bromlow v. D & M Carriers, LLC*,
438 F. Supp. 3d 1021 (N.D. Cal. 2020) .......... 12

*Burgess v. HP, Inc.*,
No. 5:16-cv-04784, 2017 WL 467845 (N.D. Cal. Feb. 3, 2017) .......... 12

*Cedars-Sinai Med. Ctr. v. Shalala*,
125 F.3d 765 (9th Cir. 1997) .......... 11

*Chabolla v. ClassPass Inc.*,
129 F.4th 1147 (9th Cir. 2025) .......... 2, 5

*Dawson v. Target Corp.*,
No. 3:24-cv-08167, 2025 WL 1651940 (N.D. Cal. June 11, 2025) .......... 3, 4

*Dawson v. Target Corp.*,
No. 25-4061, 2026 WL 2364491 (9th Cir. Aug. 14, 2026) .......... 4

*Fedoroff v. Rocket Mortg.*,
No. 3:26-cv-00702-JSC, 2026 WL 1707021 (N.D. Cal. June 12, 2026) .......... 2, 11, 12

*Ferrell v. SnapCommerce Holdings, Inc.*,
No. 3:25-cv-03160, 2025 WL 3280992 (N.D. Cal. Nov. 25, 2025) .......... 6

*Godun v. JustAnswer LLC*,
135 F.4th 699 (9th Cir. 2025) .......... 2, 5, 6

*Hartranft v. Encore Cap. Grp., Inc.*,
543 F. Supp. 3d 893 (S.D. Cal. 2021) .......... 8, 10

*Keebaugh v. Warner Bros. Ent. Inc.*,
100 F.4th 1005 (9th Cir. 2024) ....................6

*Knutson v. Sirius XM Radio Inc.*,
771 F.3d 559 (9th Cir. 2014) ....................13

*McKee v. Audible, Inc.*,
No. 2:17-cv-01941, 2017 WL 7388530 (C.D. Cal. Oct. 26, 2017) ....................3

*Morgan v. Glob. Payments Check Servs., Inc.*,
No. 2:17-cv-01771, 2018 WL 934579 (E.D. Cal. Feb. 15, 2018) ....................8

*Norcia v. Samsung Telecomms. Am., LLC*,
845 F.3d 1279 (9th Cir. 2017) ....................13

*Pacesetter Sys., Inc. v. Medtronic, Inc.*,
678 F.2d 93 (9th Cir. 1982) ....................11

*Peleg v. Neiman Marcus Group., Inc.*,
204 Cal. App. 4th 1425 (2012) ....................9

*Peng v. First Republic Bank*,
219 Cal. App. 4th 1462 (2013) ....................9

*Pizarro v. QuinStreet, Inc.*,
No. 3:22-cv-02803, 2022 WL 3357838 (N.D. Cal. Aug. 15, 2022) ....................6

*Richards v. Lloyd's of London*,
135 F.3d 1289 (9th Cir. 1998) ....................10

*Robbins v. Mscripts, LLC*,
No. 3:23-cv-01381, 2023 WL 5723220 (N.D. Cal. Sept. 5, 2023) ....................3

*Robinson v. Meta Platforms, Inc.*,
No. 3:26-cv-01616, 2026 WL 2722540 (N.D. Cal. Sept. 15, 2026) ....................2

*Snow v. Eventbrite, Inc.*,
No. 3:20-cv-03698, 2020 WL 6135990 (N.D. Cal. Oct. 19, 2020) ....................4

*Snow v. Nectar Brand, LLC*,
No. 2:22-cv-07912, 2023 WL 2558544 (C.D. Cal. Mar. 2, 2023) ....................6

*Stover v. Experian Holdings, Inc.*,
978 F.3d 1082 (9th Cir. 2020) ....................9

*Tejon v. Zeus Networks, LLC*,
174 F.4th 1322 (11th Cir. 2026) ....................7

*Valiente v. Nexgen Glob., LLC*,
No. 23-13308, 2025 WL 3140480 (11th Cir. Nov. 10, 2025) ....................7

*Vanwormer v. Urb. Outfitters, Inc.*,
No. 2:25-cv-02386, 2026 WL 972416 (W.D. Wash. Apr. 10, 2026) ........................................6

## I. INTRODUCTION

Groupon's evidence establishes that Plaintiff repeatedly assented to its Terms several times over a fifteen-year period, including in March 2026 when he enrolled in the text program giving rise to this action. Each applicable version of the Terms contained both a forum-selection clause requiring any litigation to proceed in the state or federal courts located in Cook County, Illinois, and an agreement to arbitrate disputes on an individual basis. (Dkt. 18, Mot. at 1–4; Dkt. 18-1, Conner Decl. ¶¶ 10–19.) Groupon's business records and sworn declarations further establish that its account-creation, purchase, and SMS-enrollment flows provided reasonably conspicuous, hyperlinked notice of the applicable Terms and required Plaintiff to take affirmative action manifesting assent. (Dkt. 18-1, Conner Decl. ¶¶ 10–19.) Plaintiff does not meaningfully dispute either point. He states only that he does not recall seeing the disclosures and argues that Groupon did not produce the precise screens he encountered in 2011, 2012, and 2015. (Dkt. 23-1, Freund Decl. ¶¶ 4, 6; Dkt. 23, Opp. at 14.) Neither argument creates a genuine dispute concerning contract formation under settled California law.

The March 2026 SMS enrollment independently resolves the issue. Plaintiff does not dispute that he encountered Groupon's enrollment screen or clicked the button immediately below language stating: "By clicking this button, you also agree to our Terms (inc. arbitration) and Privacy Policy." (Dkt. 18-6, Sega Decl. ¶¶ 3–5.) That express disclosure—presented in the enrollment flow for the very text-message program underlying Plaintiff's claims—provided reasonably conspicuous notice and unambiguously manifested assent. Groupon's evidence that Plaintiff also assented to the Terms when he created his account in 2011 and completed purchases in 2012 and 2015 provides additional, independent support for the same conclusion. Plaintiff's claimed failure to recall any of these events does not create a genuine dispute concerning reasonably conspicuous notice or alter the objective contract-formation analysis.

The parties' agreements should therefore be enforced. The Court should transfer this action to the Northern District of Illinois, where the court may address Groupon's motion to compel arbitration. Alternatively, if the Court declines to transfer, it should stay this action and compel the individual arbitration to which Plaintiff agreed.

## II. THE COURT SHOULD ENFORCE THE FORUM-SELECTION CLAUSE AND TRANSFER THIS ACTION TO THE NORTHERN DISTRICT OF ILLINOIS

The Ninth Circuit has held that forming a valid contract requires actual or constructive notice of the agreement and that "the parties must manifest their mutual assent to the terms of the agreement." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022). Here, both parties agree that inquiry notice is established when "(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." (Dkt. 23, Opp. at 10 (citing *Berman*, 30 F.4th at 856).)

Significantly, "there is no bright-line test for finding that a particular design element is adequate in every circumstance." *Chabolla v. ClassPass Inc.*, 129 F.4th 1147, 1156–57 (9th Cir. 2025); *see Godun v. JustAnswer LLC*, 135 F.4th 699, 710 (9th Cir. 2025) ("Such a one-size-fits-all approach would undermine the fact-intensive, totality-of-the-circumstances nature of the analysis."). Nor does the notice need to be the most prominent or central feature on the webpage; it need only be sufficiently noticeable that "a reasonably prudent Internet user would have seen it." *Id.* at 709 (citations omitted); *see also Robinson v. Meta Platforms, Inc.*, No. 3:26-cv-01616, 2026 WL 2722540, at *3 (N.D. Cal. Sept. 15, 2026) (citing *In re Holl*, 925 F.3d 1076, 1083–85 (9th Cir. 2019)) (recognizing that "online user contracts, such as Terms of Service, 'may incorporate documents and terms by reference' and that assent to such terms is valid even if it requires 'several steps and . . . web-browsing intuition'").

Here, Plaintiff attempts to overcome Groupon's sworn evidence on contract formation by stating that he does not recall assenting to the Terms and by relying on case law involving materially different evidentiary records.[1] Neither response undermines Groupon's sworn evidence establishing

[1] Tellingly, while Groupon cited to two recent decisions from this exact Court assessing similar forum-selection clauses and contract formation issues and transferring venue pursuant to section 1404(a) (*see* Dkt. 18, Mot. at 10, discussing *Beltran v. Nationstar Mortg. LLC*, No. 3:25-cv-04412-JSC, 2026 WL 637337, at *10 (N.D. Cal. Mar. 6, 2026) and *Fedoroff v. Rocket Mortg.*, No. 3:26-cv-00702-JSC, 2026 WL 1707021, at *3 (N.D. Cal. June 12, 2026)), Plaintiff failed to address these decisions, let alone explain how the same Court that made these rulings should now disregard the parties' forum-selection clause.

that Plaintiff assented to the terms on multiple occasions or creates a genuine dispute concerning contract formation under applicable law.

**A. <u>The Account-Creation and Voucher-Purchase Processes Provided Reasonably Conspicuous Notice of the Terms</u>**

Plaintiff does not dispute that he created a Groupon account in 2011 or completed Groupon transactions in 2012 and 2015. Nor does he dispute that Groupon's account-creation and transaction flows required users to affirmatively assent to Groupon's Terms. (*See* Dkt. 18-1, Conner Decl. ¶¶ 11, 13.) Instead, Plaintiff claims only that he does not recall seeing those screens or agreeing to arbitration. (Dkt. 23-1, Freund Decl. ¶ 6.) He further argues that Groupon was required to produce the precise screens he encountered years ago. (Dkt. 23, Opp. at 14.) Neither contention creates a genuine dispute regarding contract formation.

Contrary to Plaintiff's argument, California law does not require that Groupon "attach the screen Plaintiff actually saw on any of those dates." (*Id.*) Quite the opposite: "[T]he court is not precluded from concluding as a matter of law that the plaintiff was on notice . . . when he created his account" absent "any contradicting evidence about what the plaintiff saw[.]" *Robbins v. Mscripts, LLC*, No. 3:23-cv-01381, 2023 WL 5723220, at *5 (N.D. Cal. Sept. 5, 2023); *see also McKee v. Audible, Inc.*, No. 2:17-cv-01941, 2017 WL 7388530, at *4 (C.D. Cal. Oct. 26, 2017) (stating that a plaintiff must present "evidence that undermines the veracity of [the declarant's] testimony, or the authenticity of the flows").

Apparently unable to present any such contradictory evidence in support of his Opposition, Plaintiff relies heavily on *Dawson v. Target Corp.* (Dkt. 23, Opp. at 14 (citing No. 3:24-cv-08167, 2025 WL 1651940, at *3–5 (N.D. Cal. June 11, 2025).) But Plaintiff's reliance on *Dawson* is misplaced. There, the defendant's evidence involved only a sign-up flow that existed beginning in 2022, even though the plaintiff had created his account in 2014. *Dawson*, 2025 WL 1651940, at *2. The disconnect between the relevant time period and the defendant's evidence made it difficult to know what flows that plaintiff encountered. *Id.* Here, by contrast, Groupon submitted sworn testimony addressing the account-creation process in effect when Plaintiff registered on August 28, 2011, as well as descriptions of the purchase flows in effect during his 2012 and 2015 transactions.

(Dkt. 18-1, Conner Decl. ¶¶ 10–14.) Plaintiff offers no evidence contradicting that testimony. Moreover, the Ninth Circuit recently vacated the district court's decision in *Dawson*, holding that the district court erred in denying Target's motion to compel arbitration because "Dawson's equivocal statements do not resolve this material fact as a matter of law." *Dawson v. Target Corp.*, No. 25-4061, 2026 WL 2364491, at *2 (9th Cir. Aug. 14, 2026).

Plaintiff's remaining authorities fare no better. In *Snow v. Eventbrite, Inc.*, the court denied a motion to compel arbitration because the defendant submitted inconsistent evidence concerning the checkout flow presented to users. No. 3:20-cv-03698, 2020 WL 6135990, at *5–7 (N.D. Cal. Oct. 19, 2020). There is no comparable inconsistency here. Furthermore, the representations on which the defendant relied on in *Snow* "c[a]me only from Eventbrite's Motion, not from the sworn declaration underlying it." *Id.* at *6. Here, by contrast, Groupon's sworn declaration establishes the relevant flows and Plaintiff's affirmative assent to the Terms, and Plaintiff offers no contrary evidence. The defendant in *Snow* had also "submitted misleading evidence," that filed to address the plaintiff's contention—judicially noticed by the court—that users did not need to scroll past the notice of the terms before placing an order. *Id.* at *6–7. Here, Plaintiff identifies nothing misleading in Group's sworn testimony; he asserts only that he did not notice some Terms and does not remember seeing others.

Thus, *Snow* is not relevant here. Moreover, accepting Terms with a company when signing up for an account and making purchases is something that consumers would expect and are accustomed to doing when transacting with companies on the Internet, so Plaintiff cannot argue (and did not argue) that he would not expect to have agreed to Groupon's Terms in order to become a Groupon member and make purchases. *See, e.g.*, *Beltran*, 2026 WL 637337, at *5 ("Plaintiff, in undergoing a registration process to make ongoing payments, should have anticipated terms and conditions to govern his ongoing relationship with Defendant.").

In any event, as discussed below, there is no dispute about what Plaintiff encountered when he enrolled in Groupon's Text Program in March 2026: the reasonably conspicuous notice of Terms containing a forum-selection clause applicable to his claims concerning the receipt of text messages.

His March 2026 assent provides an additional, independently sufficient basis to enforce the forum-selection clause.

**B. The March 2026 SMS Enrollment Screen Also Provided Reasonably Conspicuous Notice**

Plaintiff does not dispute that he encountered the screen submitted with Groupon's evidence or clicked the enrollment button immediately below the disclosure stating: "By clicking this button, you also agree to our Terms (incl. arbitration) and Privacy Policy." (Dkt. 18-6, Sega Decl. ¶¶ 4–5.) Instead, he argues that the disclosure was less prominent than Groupon's promotional offer and that he personally did not notice the hyperlinked "Terms (incl. arbitration)." (Dkt. 23-1, Freund Decl. ¶ 4.) But inquiry notice is evaluated under an objective standard. The Ninth Circuit has made clear that the question is not whether Plaintiff subjectively noticed the disclosure, but whether a reasonably prudent Internet user would have done so. *See Godun*, 135 F.4th at 709.

In *Berman*, the Ninth Circuit found inadequate notice where the disclosure appeared in "tiny gray font," was "barely legible to the naked eye," failed to clearly identify the hyperlinks, and did not expressly advise users that clicking the button constituted assent. 30 F.4th at 856–58. Here, by contrast, the hyperlinked "Terms (incl. arbitration)" appeared immediately above the call-to-action button in black text on a white background, with the hyperlink underlined. (*See* Dkt. 18-6, Sega Decl. ¶ 3.) The disclosure also expressly stated, "By clicking this button," and then described the legal effect of clicking the button, thereby identifying both the action required and the resulting assent. (*See id.*)

In *Chabolla*, on which Plaintiff relies, "the notice's distance from relevant action items, its placement outside of the user's natural flow, and its font—notably timid in both size and color" caused it to be become "deemphasized by the overall design of the webpage" and not "prominently displayed." 129 F.4th at 1157 (citation omitted). Here, however, the disclosure and the hyperlinked Terms appeared directly above the call-to-action button, placing them directly within the user's natural flow. And although other items on the screen were larger, the font size of the underlined Terms hyperlink was comparable to other text on the screen. (*See* Dkt. 18-6, Sega Decl. ¶ 3.)

In another of Plaintiff's distinguishable cases, *Godun*, the disclosure was "printed in relatively small text and not located 'directly above or below the action . . . button'" and was "hard to read as [it did] not contrast with the lighter portions of the background image." 135 F.4th at 711. Only taken together did these flaws void the agreement; "each of these factors may not [have been] enough" on its own. *Id.* at 712. The *Godun* court stated that "[w]hat matters" with respect to a disclosure "is the explicit advisement that taking a certain action will constitute assent to contractual terms. In most cases, we assume that this will look like a 'By clicking ...' clause." *Id.* at 711 n.4. Groupon's evidence concerning Plaintiff's enrollment in its text program contains precisely the legal requirement discussed by *Godun*: the disclosure appeared directly above the action button and expressly advised users that clicking the button constituted agreement to the Terms. (*See* Dkt. 18-6, Sega Decl. ¶ 3.)

Plaintiff's proffered *Ferrell* decision is similarly inapposite. There, the court emphasized that the hyperlink appeared in very small gray font ***at the bottom of the page*** and was not otherwise highlighted. *Ferrell v. SnapCommerce Holdings, Inc.*, No. 3:25-cv-03160, 2025 WL 3280992, at *3–4 (N.D. Cal. Nov. 25, 2025). Here, the hyperlinked Terms appeared immediately above the enrollment button and were clearly underlined. Courts routinely enforce online agreements where hyperlinks appear in the same color as surrounding text, provided the overall design places users on inquiry notice. *See, e.g., Pizarro v. QuinStreet, Inc.*, No. 3:22-cv-02803, 2022 WL 3357838, at *3 (N.D. Cal. Aug. 15, 2022) ("[T]he instant hyperlink, although the same color as the rest of the textual notice, is underlined and adequately contrasted with the white background, such that a user would not 'be required to hover their mouse over otherwise plain-looking text or aimlessly click on words on a page in an effort to ferret out hyperlinks'"); *Snow v. Nectar Brand, LLC*, No. 2:22-cv-07912, 2023 WL 2558544, at *3 (C.D. Cal. Mar. 2, 2023) (finding that, despite a monochromatic color scheme, "a reasonably prudent Internet user would see the T&Cs" given their proximity to the final button); *Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1010–11 (9th Cir. 2024) (depicting a screen that provided conspicuous notice where the Terms of Service link appeared in the same white font as the language describing the effect of clicking the "Play" button); *see also Vanwormer v. Urb. Outfitters, Inc.*, No. 2:25-cv-02386, 2026 WL 972416, at *3 (W.D. Wash. Apr.

10, 2026) ("The gray text is clearly legible against a white background and there are few other elements to distract from the notice. The hyperlink to the Terms was also underlined, an increasingly common way to denote hyperlinks.").

Finally, Plaintiff cites two Eleventh Circuit cases—*Tejon v. Zeus Networks, LLC*, 174 F.4th 1322, 1327 (11th Cir. 2026), and *Valiente v. Nexgen Glob., LLC*, No. 23-13308, 2025 WL 3140480, at *6 (11th Cir. Nov. 10, 2025)—neither of which is binding on this Court or involves a screen comparable to the SMS enrollment screen at issue here. *See Tejon*, 174 F.4th at 1325–27 (finding a lack of conspicuousness where the "hyperlink was among the smallest and least visible text on the page," appeared amid "clutter regarding payment details and age requirements," and appeared below "two large, red action buttons"); *Valiente*, 2025 WL 3140480, at *6 ("In all, the 'Terms of Use' hyperlink was easy to miss due to the distracting website and large green call-to-action buttons that were nowhere near the terms . . . On these facts, a reasonable person would not think to scroll down all the way to the bottom of a busy page, with large, green, call-to-action buttons, and notice a hyperlink that is in a small, white font."). There is no similarly small and barely visible hyperlink here, nor is the action button separated from the Terms. Thus, these Eleventh Circuit decisions do not support Plaintiff's attempt to avoid the Terms he accepted.

Groupon's evidence concerning Plaintiff's acceptance of the Terms in 2011, 2012, and 2015 is sufficient to establish contract formation. His March 2026 enrollment provides an additional and independently sufficient basis for the same conclusion: a reasonably prudent Internet user would understand that clicking the enrollment button manifested assent to the Terms, including the forum-selection clause.

**C. <u>Plaintiff's Lack of Recollection Is Legally Irrelevant</u>**

Plaintiff's response to Groupon's evidence of contract formation is primarily to claim that he does "not recall" seeing or "did not understand" the July 2011 Terms, February 2015 Terms, or February 2026 Terms. (Dkt. 23-1, Freund Decl. ¶¶ 4, 6.) But Plaintiff's claimed failure to recall seeing the Terms, reviewing them, or understanding their legal effect does not negate assent to the forum-selection clause or arbitration agreement. Case law in this circuit is clear that a failure to recall, review, or understand the Terms does not undo Plaintiff's agreement to the forum-selection

provision or arbitration agreement. *See, e.g.*, *Morgan v. Glob. Payments Check Servs., Inc.*, No. 2:17-cv-01771, 2018 WL 934579, at *3 (E.D. Cal. Feb. 15, 2018) ("[P]laintiff's failure to remember seeing the terms of an agreement is insufficient to dispute that the plaintiff agreed to those terms, and a party's failure to read a contract is not a defense to its enforcement."); *Al-Thani v. Wells Fargo & Co.*, No. 4:08-cv-01745, 2009 WL 55442, at *6 (N.D. Cal. Jan. 7, 2009) (citing *Stewart v. Preston Pipeline Inc.*, 134 Cal. App. 4th 1565, 1587 (2005)) (internal quotations omitted) ("Plaintiff's opposition—based upon nothing more than his claim that he had not read or understood the agreement before signing it—raised no triable issue on the question of mutual assent.").

In short, Groupon's records establish that Plaintiff could not have created his account, completed his purchases, or enrolled in the SMS campaign without being presented with the relevant disclosures and manifesting assent to the applicable Terms. (*See generally* Dkt. 18-1, Conner Decl.; Dkt. 18-6, Sega Decl.) Plaintiff does not challenge the authenticity of Groupon's evidence; identify any material inconsistency in the registration, purchase, or enrollment flows; or offer any evidence showing that he could have completed those processes without agreeing to the Terms. His claimed lack of recollection is therefore insufficient as a matter of law to avoid the forum-selection clause.

**D. <u>Plaintiff Concedes That the Forum-Selection Clause Encompasses His Claim</u>**

As stated in the Motion, the forum-selection clause to which Plaintiff agreed in the Terms encompasses any Dispute that proceeds in Court. (*See* Dkt. 18-1, Conner Decl., Ex. D at 12, § 24(f); Ex. C at 8, § 24(f).) This broad language covers this action. Plaintiff contests only formation and never addresses scope. (Dkt. 23, Opp. at 10–14.) Plaintiff has therefore conceded that the forum-selection clause encompasses his claim. *See Alba v. Harbor Freight Tools USA, Inc.*, No. 5:26-cv-01069, 2026 WL 2161637, at *2 (N.D. Cal. July 27, 2026) ("Plaintiffs make no argument regarding, and therefore concede, the remaining issues raised by [the defendant]."); *Hartranft v. Encore Cap. Grp., Inc.*, 543 F. Supp. 3d 893, 913 (S.D. Cal. 2021) ("[W]here a non-moving party fails to address an argument raised by the moving party in the opposition brief, the Court may consider any arguments unaddressed by the non-moving party as waived.").

**E. Plaintiff is Bound to the April 17 Terms, Which In Any Case Contain the Same Forum-Selection Clause as the February 12 Terms.**

As established in the Motion, Groupon updated its Terms pursuant to the modification provision in the February 12 Terms, which is sufficient to bind Plaintiff to the April 17 Terms by the time he received the at-issue text messages in June 2026. (Dkt. 18-1, Conner Decl., Ex. C at 2, § 5.) Plaintiff overreads *Stover v. Experian Holdings, Inc.*, which merely requires that both parties have notice of the change in terms. 978 F.3d 1082, 1084–86 (9th Cir. 2020). It does not prescribe a one-size-fits-all method of providing notice. *Id.* Moreover, in *Stover*, the court held that the modified terms did not apply to a plaintiff who had viewed them after canceling her subscription and ending her business relationship with the defendant. *Id.* Here, by contrast, Plaintiff maintained his business relationship with Groupon through at least March 29, 2026. As expressly permitted by the February 12 Terms, Groupon then modified the agreement, and Plaintiff's continued use constituted assent to the updated Terms.

The modification provision is a far cry from the "unduly broad and illusory provisions" Plaintiff describes in his Opposition. (Dkt. 23, Opp. at 19.) Plaintiff's cited authority proves this very point. As the court held in *Peng v. First Republic Bank*, unilateral modification provisions are not unconscionable. 219 Cal. App. 4th 1462, 1473–74 (2013). And in *Peleg v. Neiman Marcus Group., Inc.*, the court held that the agreement was illusory because it provided for ***retroactive*** modifications. 204 Cal. App. 4th 1425, 1464–65 (2012). By contrast, Groupon's modification provision provides only for prospective modifications. (Dkt. 18-1, Conner Decl., Ex. C at 2, § 5.)

But none of Plaintiff's protestations about terms modifications are relevant for the purposes of this Motion, because the February 12 Terms and April 17 Terms are ***the same*** when it comes to requiring individual arbitration of disputes and, if litigation occurs, selecting a venue of Cook County, Illinois, for any litigation. Plaintiff does not, and cannot, cite to any material differences when both Terms contain the same forum-selection clause and arbitration provision. (*Compare* Dkt. 18-1, Conner Decl., Ex. C at 7–8, § 24 *with* Ex. D at 10–12, § 24.) Plaintiff is simply setting up a strawman here, to try to swat it down—the Court need not rule that the April 17 Terms control in

order to find (as it should) that Plaintiff assented to earlier versions of the Terms that contained the forum selection clause.

**F. <u>Plaintiff Does Not Satisfy the "Heavy Burden" Standard for Invalidating a Forum-Selection Clause</u>**

While a section 1404(a) motion ordinarily requires consideration of a variety of public- and private-interest factors, the Supreme Court has made clear that a valid forum-selection clause means that all private-interest factors favor transfer and "a district court should transfer the case unless extraordinary circumstances unrelated to the convenience of the parties clearly disfavor a transfer." *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 52, 66 (2013) ("In all but the most unusual cases, … 'the interest of justice' is served by holding parties to their bargain."). As stated in the Motion, forum-selection clauses are *prima facie* valid and should be enforced unless the plaintiff shows that enforcement would be unreasonable and unjust. (Dkt. 18, Mot. at 7 (citing *Manetti-Farrow, Inc. v. Gucci Am., Inc*., 858 F.2d 509, 514 (9th Cir. 1988)).)

Plaintiff does not argue that enforcement of the forum-selection clause would be "unreasonable or unjust" under the three recognized grounds for avoidance: (a) fraud or overreaching of the clause itself, (b) deprivation of plaintiff's day in court, or (c) contravention of strong public policy. *See Richards v. Lloyd's of London*, 135 F.3d 1289, 1294 (9th Cir. 1998) (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12-13, 15 18 (1972). Thus, Plaintiff concedes that enforcement of the forum-selection clause is not unreasonable or unjust. *See, e.g.*, *Hartranft*, 543 F. Supp. 3d at 913–14 (quoting *Pac. Dawn LLC v. Pritzker*, 831 F.3d 1166, 1178 n.7 (9th Cir. 2016)) (noting that "the plaintiffs did not raise that argument to the district court in their . . . opposition to the defendants' motion for summary judgment, so the argument was waived").

Plaintiff can thus only avoid the forum-selection clause by meeting his "burden of showing that public-interest factors overwhelmingly disfavor a transfer." *Atl. Marine*, 571 U.S. at 67. He fails to do, as discussed below.

**G. <u>Plaintiff Did Not Show the Exceptional Circumstances Necessary to Avoid the Forum-Selection Clause</u>**

*Atlantic Marine* controls here: because the parties agreed to a valid forum-selection clause,

Plaintiff's personal forum preference carries no weight.[2] (Dkt. 18, Mot. at 10 (citing *Atl. Marine*, 571 U.S. at 67).) Only the public-interest factors remain relevant. (Dkt. 18, Mot. at 10 (citing *Fedoroff*, 2026 WL 1707021, at *9).) And to overcome the forum-selection clause, Plaintiff bears the burden of showing that public-interest factors ***overwhelmingly*** disfavor transfer. *See, e.g. Beltran*, 2026 WL 637337, at *3 (quoting *Atl. Marine*, 571 U.S. at 67) ("[T]he party acting in violation of the forum-selection clause … must bear the burden of showing that public-interest factors overwhelmingly disfavor a transfer.").

None of Plaintiff's arguments under section 1404(a) shows that transfer would be overwhelmingly disfavored here. ***First***, the first-to-file rule does not preclude transfer, as Plaintiff argues. (*See* Dkt. 23, Opp. at 17 (citing *Cedars-Sinai Med. Ctr. v. Shalala*, 125 F.3d 765, 769 (9th Cir. 1997); *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 95–96 (9th Cir. 1982)).) Indeed, as the court acknowledged in *Cedars-Sinai*, the purpose of the first-to-file rule is to support "efficiency and judicial economy." 125 F.3d at 769 (finding the first-to-file rule inapplicable). It is not "a rigid or inflexible rule to be mechanically applied." *Pacesetter Sys., Inc.*, 678 F.2d at 95. Here, transfer would support those dual purposes by moving this action, as well as other nationwide class actions filed in Florida and Texas, to the forum established in the Terms—the Northern District of Illinois—rather than disregarding a forum-selection clause merely because one plaintiff filed first in a personally preferred venue.

***Second***, while Plaintiff argues that the court-congestion statistics comparing the Northern District of California and the Northern District of Illinois show a "mixed picture" (Dkt. 23, Opp. at 17), that argument only underscores that differences in court congestion do not warrant denying transfer because there is no showing that the Northern District of California is better positioned to address his claims, let alone a showing of exceptional circumstances. *See Fedoroff*, 2026 WL

[2] Plaintiff argues that this Court should first determine "whether the asserted contract exists." (Dkt. 23, Opp. at 16 (citing *Whalen v. NBA Props., Inc.*, No. 3:25-cv-01030, 2025 WL 1948591, at *4–5 (N.D. Cal. July 16, 2025).) The *Whalen* court found "an agreement formed through an interface with underlined hyperlinks immediately above an 'Agree and Subscribe' button." (Dkt. 23, Opp. at 16 (citing *Whalen* at *4–5 (holding that plaintiffs had assented to sign-in wrap agreement).) The acceptance at issue here is substantively similar: the Terms are hyperlinked above the call-to-action button, and Groupon testified that Plaintiff would have had to click that button in 2026, or take a similar affirmative action in 2011, 2012, and 2015, supporting valid contract formation.

1707021, at *10 (finding no showing that burden factors overwhelmingly disfavored transfer where the Northern District of California and Eastern District of Michigan had comparable administrative difficulties flowing from court congestion). Moreover, the Northern District of Illinois has greater familiarity with the Illinois law governing the Terms. *See Beltran*, 2026 WL 637337, at *8.

***Third***, Plaintiff seeks to bring his claim on behalf of a nationwide class, which overrides any local interest California may have in adjudicating one resident plaintiff's claims. (Dkt. 18, Mot. at 11–12); *see, e.g.*, *Fedoroff*, 2026 WL 1707021, at *10; *Burgess v. HP, Inc.*, No. 5:16-cv-04784, 2017 WL 467845, at *12 (N.D. Cal. Feb. 3, 2017) ("Usually, a particularized local interest does not exist where nationwide class allegations have been brought."). Meanwhile, Groupon is headquartered in Illinois, and Illinois has an interest in ensuring that Illinois businesses abide by the law. *Bromlow v. D & M Carriers, LLC*, 438 F. Supp. 3d 1021, 1030–31 (N.D. Cal. 2020); *Fedoroff*, 2026 WL 1707021, at *10 (recognizing the forum state's interest in adjudicated a controversy involving a company headquartered there). On this point, Plaintiff not only fails to cite a single case in support of his argument but also wholly ignores the persuasive authority Groupon cites in the Motion. Indeed, as noted above, in *Fedoroff* and *Beltran*, this Court rejected similar venue challenges brought by similarly situated plaintiffs seeking to avoid transfer, and Plaintiff's Opposition entirely ignores those decisions cited in Groupon's Motion.

***Fourth***, Plaintiff ignores, and thus concedes, that the TCPA is a federal cause of action and that there is no connection to California law needed to assess the merits of his claims. (Dkt. 18, Mot. at 11); *see Alba*, 2026 WL 2161637, at *2 (stating that issues unaddressed in Opposition briefing are conceded). ***Lastly***, Plaintiff confirms that transfer rests on the forum-selection clause and the public-interest factors, not a parties' forum preference. (*See* Dkt. 23, Opp. at 17–18; *see also* Dkt. 18, Mot. at 12 (noting the Seventh Circuit's ruling holding that the TCPA's Do Not Call provisions do not apply to text messages, which explains why Plaintiff personally would not like to be transferred into a federal court in that Circuit).)

Because the forum-selection clause is not ambiguous and Plaintiff does not present overwhelming public-interest factors disfavoring transfer, the forum-selection clause warrants transfer to the Northern District of Illinois.

**III. ALTERNATIVELY, THE COURT SHOULD COMPEL ARBITRATION**

In response to the Motion to Compel Arbitration, Plaintiff concedes that the threshold question of formation is dispositive and does not engage with the Motion's arguments on scope, class-action waiver, or the mandatory pre-arbitration notice requirement. (Dkt. 23, Opp. at 18–19; *see* Dkt. 18, Mot. at 12–17.) Instead, Plaintiff offers general arguments against arbitration.

But Plaintiff's own cited authorities do little to support his position. For example, Plaintiff asserts that "doubts may be resolved in favor of arbitration when construing the scope of an existing agreement, but courts do not presume an agreement into existence." (Dkt. 23, Opp. at 18 (citing *Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1290–91 (9th Cir. 2017); *Knutson v. Sirius XM Radio Inc*., 771 F.3d 559, 565 (9th Cir. 2014)).) Both cases are distinguishable because neither involves an online agreement like the one Plaintiff assented to here. Rather, in *Norcia*, the arbitration provision was in a product box the plaintiff did not take, and in *Knutson*, the arbitration provision was mailed to the plaintiff only after he had begun his trial subscription. *Norcia*, 845 F.3d at 1290–91 (affirming the order denying the motion to compel arbitration); *Knutson*, 771 F.3d at 566.

Essentially, Plaintiff's Opposition concedes that if the Court finds that he agreed to any version of the Terms, he also agreed to arbitrate his disputes with Groupon. The record establishes that Plaintiff repeatedly assented to Terms containing an arbitration provision, including when he enrolled in the Text Program that led to the text messages at issue in this lawsuit. He should therefore be compelled to arbitrate his disputes—either by the Illinois federal court after transfer or by this Court if transfer is denied.

**IV. CONCLUSION**

Groupon respectfully requests that the Court transfer this action to the U.S. District Court for the Northern District of Illinois, or, in the alternative, compel arbitration of Plaintiff's claims.

DATED: September 21, 2026

By: */s/ Becca Wahlquist*

Becca Wahlquist (SBN 215948)
KELLEY DRYE & WARREN LLP
350 South Grand Avenue, Suite 3800
Los Angeles, CA 90071
Telephone: (213) 547-4916
Facsimile: (213) 547-4901
bwahlquist@kelleydrye.com

*Counsel for Defendant Groupon, Inc.*