**KJC LAW GROUP, A.P.C.**
Kevin J. Cole (SBN 321555)
*kevin@kjclawgroup.com*
9701 Wilshire Blvd., Suite 1000
Beverly Hills, CA 90212
Telephone: (310) 861-7797

**PARONICH LAW, P.C.**
Anthony I. Paronich (*Pro Hac Vice*)
*anthony@paronichlaw.com*
Alex Jilizian (SBN 362307)
*alex@paronichlaw.com*
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone: (617) 485-0018

*Attorneys for Plaintiff*
*Robert Freund*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ROBERT FREUND, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GROUPON, INC.,<br><br>Defendant. | Case No. 3:26-cv-05733-JSC<br><br>**PLAINTIFF's NOTICE OF AND MOTION FOR CERTIFICATION OF AN INTERLOCUTORY APPEAL AND FOR STAY; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: December 3, 2026<br>Time: 10:00 a.m.<br>Courtroom: 8, 19th Floor |

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on December 3, 2026, at 10:00 a.m., or as soon thereafter as the matter may be heard before the Honorable Jacqueline Scott Corley, in Courtroom 8, 19th Floor, of the United States District Court for the Northern District of California, Plaintiff Robert Freund will and hereby does move under 28 U.S.C. § 1292(b) for an order certifying the Court's October 14, 2026 Order granting Defendant Groupon, Inc.'s motion to transfer venue (Dkt. No. 26) for interlocutory appeal. Plaintiff requests certification of the following controlling question of law:

> Whether a promotional sign-in-wrap screen supplies reasonably conspicuous notice of contractual terms where the terms hyperlink is underlined and uses initial capitals, appears in the same color and small type as a paragraph of marketing disclosures immediately above the action button, and the transaction's context supplies no additional reason to look for contractual terms.

This question concerns the legal sufficiency of inquiry notice on the screen reproduced in the Order. For purposes of certification, Plaintiff accepts that screen as representative and accepts the Court's determination that the transaction's context is neutral. The requested appeal does not depend on new evidence, Plaintiff's subjective understanding, or a reassessment of witness credibility. Certification is warranted because the question controls the contractual basis for transfer and the governing Section 1404(a) analysis; the authorities addressing online notice provide substantial grounds for reasonable jurists to disagree about the legal significance of the features on which the Order relies; and resolving that threshold issue now may materially advance the litigation by settling the contractual premise for transfer before further proceedings occur under it. Plaintiff also requests that the Court stay implementation of the transfer Order while this motion is pending and, if certification is granted, pending a timely petition for permission to appeal and any appeal the Ninth Circuit permits. Plaintiff requests that the certification

be incorporated into an amended Order containing the findings required by Section 1292(b).

This motion is based on this notice, the accompanying memorandum of points and authorities, the October 14, 2026 Order, Plaintiff's opposition and declaration (Dkt. Nos. 23 and 23-1), and the record in this action.

DATED: October 21, 2026

Respectfully Submitted,

**KJC LAW GROUP, A.P.C.**

By: */s/ Kevin J. Cole*
Kevin J. Cole, Esq.

**PARONICH LAW, P.C.**

By: */s/ Anthony I. Paronich*
Anthony I. Paronich, Esq.

*Attorneys for Plaintiff*
*Robert Freund*

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The October 14 Order turns on one threshold determination: that Groupon's promotional screen gave Freund reasonably conspicuous notice of contractual terms. That determination supplied the agreement necessary to enforce the Illinois forum-selection clause. It also changed the transfer analysis entirely. Once the Court found a contract, it disregarded Freund's choice of forum and the parties' private interests and required Freund to show that public-interest factors overwhelmingly disfavored transfer. Dkt. No. 26 ("Order") at 9–11. Freund requests certification under 28 U.S.C. § 1292(b) of the legal question underlying that determination. The screen is in the record. The parties agree Freund clicked its button. The Court found the transaction's context neutral. The remaining issue is whether the screen's placement and treatment of the terms hyperlink satisfy the notice required by *Berman v. Freedom Financial Network, LLC*, 30 F.4th 849 (9th Cir. 2022), *Chabolla v. ClassPass Inc.*, 129 F.4th 1147 (9th Cir. 2025), and *Godun v. JustAnswer LLC*, 135 F.4th 699 (9th Cir. 2025).

The Order found sufficient notice because the link was underlined, its words used initial capitals, its type was black, and the disclosure appeared immediately above the button. Order at 6–8. Those features matter. But *Berman* requires a hyperlink to be readily apparent, and it requires consideration of the notice's prominence in the screen as a whole. 30 F.4th at 856–57. Whether ordinary initial capitals and proximity to a button give the necessary prominence to a same-color hyperlink embedded in smaller disclosure text presents a substantial question under that standard, particularly where the transaction supplies no additional reason to seek out contractual terms. The proposed appeal would address that question on the existing record. It would not ask the Ninth Circuit to resolve whether Freund saw a different mobile screen, whether he actually read the terms, or whether the April revisions bound him. Nor would it ask the Ninth Circuit merely to rebalance the public-interest factors. It would decide whether the contract supporting the Order was formed in the first place.

Freund recognizes that certification is exceptional. *In re Cement Antitrust Litigation*, 673 F.2d 1020, 1026 (9th Cir. 1982). He also recognizes that a successful appeal would not dispose of his TCPA claim. But Section 1292(b) does not require an appeal to end the case. *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011). Here, immediate review may settle the contractual issue that determines the basis for transfer and bears directly on Groupon's still-unresolved alternative request for arbitration. The Court should certify its Order and preserve the opportunity for review through a stay.

## II. THE ORDER AND THE QUESTION PRESENTED

On March 29, 2026, Freund entered his telephone number in a Groupon promotional screen offering $10 off a $20 purchase. Approximately fifteen minutes later, he sent "STOP," and Groupon confirmed that he was unsubscribed and would receive no further messages. Dkt. No. 23-1 ("Freund Decl.") ¶ 3. This action concerns marketing messages allegedly sent after revocation. Order at 1–2; Dkt. No. 23 at 7–8. Freund received the challenged messages in California, where he resides. Freund Decl. ¶¶ 2, 7. Groupon sought transfer based on a forum-selection clause in its online Terms of Use, or alternatively an order compelling arbitration. The Court granted transfer on October 14, 2026, without oral argument. It did not reach arbitration. Order at 1 & n.2.

The Court applied California contract-formation law and treated Groupon's screen as a sign-in-wrap agreement. Groupon relied on inquiry notice, not actual notice. *Id.* at 4–5. Under the applicable test, Groupon had to establish both reasonably conspicuous notice of the terms and an action unambiguously manifesting assent. *Id.* at 5 (citing *Berman*, 30 F.4th at 856). The screen reproduced at page 3 of the Order contains a large green discount headline, a promotional subheading, a paragraph addressing marketing messages and related disclosures, and a large dark sign-up button. The final sentence of the disclosure paragraph states that clicking the button also signifies agreement to the terms and privacy policy. The "Terms (incl. arbitration)" hyperlink is underlined, but it appears in the same color and size as the surrounding disclosure text. *Id.* at 3, 6. The Court found that underlining, initial capitalization, black text, proximity to the button, and a relative lack of

distracting elements supplied reasonably conspicuous notice. *Id.* at 6–8. It distinguished *Ferrell v. SnapCommerce Holdings, Inc.*, No. 25-cv-03160-JST, 2025 WL 3280992 (N.D. Cal. Nov. 25, 2025), because *Ferrell* involved gray text at the bottom of the page. It distinguished *Berman* and *Godun* based on font legibility, screen design, and placement. Order at 7–8.

The Court separately found the context of the transaction neutral. Although Freund had previously used Groupon and agreed to recurring messages, the transaction lacked several indicators of an ongoing contractual relationship. Applying *Chabolla*, the Court concluded that context neither favored nor disfavored notice. *Id.* at 8–9. It then found an unambiguous manifestation of assent because the disclosure identified the button click as the act signifying agreement and Freund admittedly clicked it. *Id*. at 9.

The Order relied on the February 2026 Terms. It expressly declined to decide whether Freund agreed to the April revisions because the forum-selection language was identical. *Id.* at 10 n.4. It also declined to decide whether account creation in 2011 or purchases in 2012 and 2015 formed an agreement. *Id.* at 9 n.3. Those matters therefore are not the basis for this request.

The controlling question is:

> Whether a promotional sign-in-wrap screen supplies reasonably conspicuous notice of contractual terms where the terms hyperlink is underlined and uses initial capitals, appears in the same color and small type as a paragraph of marketing disclosures immediately above the action button, and the transaction's context supplies no additional reason to look for contractual terms.

For this question, Freund accepts the representative screen and the neutral context found by the Court. The dispute concerns their legal effect under the notice standard.

## III. <u>LEGAL STANDARD</u>

Section 1292(b) permits certification where an otherwise non-appealable interlocutory order involves a controlling question of law, substantial ground exists for a difference of opinion on that question, and an immediate appeal may materially advance

the ultimate termination of the litigation. *Reese*, 643 F.3d at 687–88. Each requirement must be satisfied.

A question is controlling when its resolution could materially affect the outcome of the litigation in the district court. *In re Cement*, 673 F.2d at 1026–27. The inquiry is not limited to questions that dispose of every claim. *See Kuehner v. Dickinson & Co.*, 84 F.3d 316, 319 (9th Cir. 1996) (addressing a controlling question in an order staying proceedings pending arbitration). *Reese* likewise rejects a requirement that interlocutory review necessarily have a final, dispositive effect. 643 F.3d at 688.

Substantial ground for difference of opinion exists where reasonable jurists might disagree about the issue's resolution. *Reese*, 643 F.3d at 688. A developed conflict in decisions is not indispensable; a sufficiently substantial unresolved legal issue may warrant certification before contradictory precedent accumulates. *Id.* The question must nevertheless justify departure from the normal course of appellate review. *In re Cement*, 673 F.2d at 1026. Section 1292(b) serves to avoid protracted and expensive litigation, not to provide routine review of every disputed interlocutory ruling. *Id.*

Courts have certified forum-selection rulings under § 1292(b) where the question presented was one of law that did not depend on disputed facts, and appellate courts have accepted those appeals. *See Fireman's Fund Ins. Co. v. M.V. DSR Atlantic*, 131 F.3d 1336 (9th Cir. 1997) (Ninth Circuit reviewing certified order on enforceability of a forum-selection clause); *Efron v. Sun Line Cruises, Inc.*, 67 F.3d 7 (2d Cir. 1995) (Second Circuit reviewing, on certification, whether a forum-selection clause in a ticket contract was reasonably communicated); *McTigue v. Regal Cruises*, No. 97 Civ. 7646 (SHS), 1998 WL 289153 (S.D.N.Y. June 3, 1998) (certifying forum-selection ruling for interlocutory appeal in light of *Efron*); *Red Bull Assocs. v. Best W. Int'l, Inc.*, 686 F. Supp. 447 (S.D.N.Y. 1988) (certifying order declining to enforce forum-selection clause); *Terra Int'l, Inc. v. Miss. Chem. Corp.*, 922 F. Supp. 1334 (N.D. Iowa 1996) (certifying forum-selection ruling). Certification has been denied, by contrast, where a forum-selection ruling turned on applying settled law to a case-specific factual record. *See Madoff v. Bold Earth Teen*

*Adventures*, No. 12-00470 SOM/KSC, 2013 WL 3179525 (D. Haw. June 20, 2013); *see also Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010) (that settled law might be applied differently does not itself establish substantial ground for disagreement). This motion falls on the first side of that line. Freund accepts the screen and the neutral-context finding as the Court found them, so the question is the legal effect of an undisputed record. Freund also brings this motion promptly, seven days after the Order issued.

## IV. THE REQUIREMENTS FOR CERTIFICATION ARE SATISFIED

### A. The Question Controls the Contractual Basis for Transfer

The notice question determines whether Groupon established the March 2026 agreement on which the Order rests. Without that agreement, the forum-selection clause cannot support the transfer ordered here. *Atlantic Marine Construction Co. v. U.S. District Court*, 571 U.S. 49, 62 n.5 (2013), expressly premises its special transfer analysis on a contractually valid forum-selection clause. The formation issue therefore precedes the exercise of transfer discretion.

The consequences are concrete. The Court disregarded Freund's forum choice and the parties' private interests because it found an enforceable forum-selection agreement. Order at 10. It then required Freund to demonstrate that public-interest factors overwhelmingly disfavored transfer. *Id.* at 10–11. If the March screen did not supply legally sufficient notice, those consequences do not follow from that screen. Groupon would instead have to establish another contractual basis for enforcing the clause or justify transfer under the ordinary Section 1404(a) analysis. *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000). The Court did not independently hold that transfer was warranted under that ordinary analysis. Nor did it resolve Groupon's historical-transaction theories. Order at 9 n.3, 10–12. A favorable appellate ruling would accordingly require further consideration of the transfer request under a different legal premise. Freund does not suggest that reversal would automatically establish that no agreement could have arisen at any other time. It would remove the sole formation ground the Court actually decided.

The question also affects Groupon's alternative arbitration request. That request remains undecided, and the March screen is part of Groupon's asserted basis for enforcing the Terms. Order at 1 n.2; Dkt. No. 23 at 18. An appellate determination of whether that screen formed an agreement would narrow the contractual issues requiring resolution even if another formation theory remained available. *See Kuehner*, 84 F.3d at 319.

Groupon may characterize the question as a factual disagreement about a webpage. The proposed appeal does not depend on competing evidence about the page. Freund accepts, for this purpose, the screen the Court used and the Court's finding that context is neutral. No additional testimony is necessary to identify the hyperlink's wording, color, size, or location. The legal issue is whether those undisputed features provide the inquiry notice necessary to bind a consumer to the linked terms. That issue determines whether *Atlantic Marine*'s contractual presumption applies; it is not simply a request to reconsider convenience or weigh the same public interests differently.

Courts resolve this kind of notice question from the face of an undisputed screen. *See Meyer v. Uber Techs., Inc.*, 868 F.3d 66 (2d Cir. 2017) (determining as a matter of law, from the registration screens in the record, whether hyperlinked terms were reasonably conspicuous). That is why the question suits review under § 1292(b): the screen the Court examined is the screen the Ninth Circuit would examine, and no further factfinding is needed. *Cf. Efron*, 67 F.3d 7 (reviewing on certification whether a forum-selection clause was reasonably communicated).

### B. <u>The Notice Decisions Leave Substantial Room for Disagreement on this Question</u>

*Berman* requires more than the physical presence of terms somewhere on a screen. The notice must be sufficiently conspicuous to a reasonably prudent user, and the existence of a hyperlink must itself be readily apparent. 30 F.4th at 856–57. *Chabolla* and *Godun* require courts to consider both visual presentation and transactional context. *Chabolla*, 129 F.4th at 1155–57; *Godun*, 135 F.4th at 709–10. The substantial question here concerns

what those requirements demand when context is neutral and the asserted visual distinction consists principally of underlining, initial capitals, and placement above a button.

_First_, reasonable jurists could disagree whether ordinary initial capitalization supplies meaningful notice beyond underlining. The Order explains that the words are capitalized as proper nouns and therefore contrast with the surrounding text. Order at 6. But *Berman*'s discussion of recognizable hyperlink design refers to contrasting font color and all-capital lettering, and cautions that merely underscoring text may be insufficient. 30 F.4th at 857. Initial capitals are commonplace within ordinary prose. They do not necessarily signal a clickable contractual link or draw the user's attention to it. A reasonable jurist could conclude that initial capitals do not supply the additional visual distinction needed when the link otherwise shares the disclosure paragraph's type size and color. Freund does not contend that every enforceable hyperlink must be blue, or that *Berman* creates a mandatory design checklist. The question is whether the particular substitute accepted here provides the conspicuous notice that *Berman* requires. A rule permitting ordinary capitalization and location to carry that burden has consequences well beyond a disagreement about one shade of text.

_Second_, the Order's treatment of proximity presents a substantial issue under *Chabolla*. The Order relies on *Chabolla*'s discussion of placing notice directly above or below the action item in a way that interrupts the user's natural progression. Order at 6 (citing *Chabolla*, 129 F.4th at 1157). But a paragraph can be physically located above a button without its final sentence drawing attention to contractual terms. Here, the same paragraph first addresses marketing consent, service providers, help and cancellation instructions, message frequency, and rates. Order at 3. A reasonable jurist could conclude that the placement of that paragraph does not establish that the contractual notice within it interrupts the consumer's progression from the discount offer to the button. The Court also relied on *Beltran v. Nationstar Mortgage LLC*, No. 25-cv-04412-JSC, 2026 WL 637337, at *5 (N.D. Cal. Mar. 6, 2026), reasoning that a reader ordinarily encounters text above a button before moving to the button. Order at 6. That inference supports the Court's

conclusion, but it does not resolve the distinction between an opportunity to read text and notice that reasonably calls attention to contractual terms. *Berman*'s separate conspicuousness requirement would have little force if placing legible disclosure text before a button were generally enough. The proposed appeal would clarify the legal significance of that placement when the hyperlink has limited differentiation from surrounding text.

*Third*, *Ferrell* demonstrates why the issue warrants review even after accounting for the differences the Court identified. *Ferrell* rejected a terms link presented in small gray type where the operator had done little beyond underlining the hyperlink. 2025 WL 3280992, at *3; Order at 6–7. The Order distinguished that display because Groupon used black text and placed the disclosure above the button. Order at 7. Freund acknowledges those differences. Black text may improve legibility, and proximity may improve visibility. But legibility of the paragraph and recognition of a contractual hyperlink are separate concerns. Black text on a light background does not distinguish the link from other black text in the paragraph. Reasonable jurists could disagree whether the changes identified by the Order cure the notice problem *Ferrell* addressed.

*Fourth*, the neutral transactional context makes this issue especially suitable for clarification. The Court considered Freund's prior dealings and the prospect of recurring texts but found that neither supplied additional reason to look for contractual terms. Order at 8–9. That finding forecloses using the broader relationship to compensate for a weak visual notice. Under *Godun*, context and placement must be considered together. 135 F.4th at 709–10. With context neutral, the visual features must establish sufficient notice on their own. The question is whether underlining, ordinary capitalization, and proximity accomplish that where the disclosure remains materially smaller than the promotional headline and button.

*Finally*, the express statement tying a click to agreement does not eliminate the notice question. The Court found that language sufficient to identify the action signifying assent. Order at 9. Freund's proposed appeal accepts that the sentence identifies the action.

*Berman* nevertheless requires both conspicuous notice and unambiguous assent. 30 F.4th at 856. Establishing the second requirement cannot dispense with the first. Otherwise, an explicit agreement sentence would enforce terms regardless of whether its presentation reasonably alerted the user to them.

These points do not establish a square conflict between decisions addressing identical screens, and Freund does not claim one. They establish a substantial disagreement about the legal sufficiency of the features the Order deemed adequate. *Reese* permits certification where reasonable jurists might reach different conclusions on an unresolved legal issue; it does not require the parties to await a direct conflict. 643 F.3d at 688. The Court may adhere to its conclusion and still recognize that appellate guidance is warranted on the controlling question.

Certification does not require a square conflict. In *Vernon v. Qwest Communications International, Inc.*, 925 F. Supp. 2d 1185 (D. Colo. 2013), the court recognized that judges in its own district disagreed about the enforceability of an online subscriber agreement and certified its order under § 1292(b). The same is true here: the Order itself had to distinguish *Ferrell* and read *Berman* and *Godun* against a screen that those decisions did not address.

**C. <u>Immediate Review May Materially Advance the Litigation</u>**

This case has reached a threshold determination that directs where further litigation will proceed and rests on a contract Groupon also invokes to seek arbitration. Resolving that contractual premise now may prevent the parties and another court from proceeding on a foundation that later requires correction. The proposed review is confined to a screen already reproduced in the Order, an established sequence of events, and the legal notice standard. It requires no merits discovery into the challenged text messages.

A favorable appellate ruling would remove the formation ground supporting the transfer Order and require consideration of any remaining grounds before the case proceeds on the assumption that Freund agreed to the Illinois forum. It would also resolve whether Groupon may rely on the March screen to establish assent for its alternative arbitration request. An affirmance would settle that same issue and permit further proceedings on a

confirmed contractual premise. Either result would narrow a threshold dispute that otherwise follows the action into its next stage.

Freund does not claim that reversal would end the TCPA action, eliminate all proceedings concerning formation, or necessarily prevent every later challenge. Those outcomes are not required. *Reese* holds that Section 1292(b) does not demand a final, dispositive effect; the question is whether immediate review may materially advance the litigation. 643 F.3d at 688. Here, the benefit is a decision on the foundation for the transfer and a substantial part of the remaining arbitration dispute before the parties incur the expense of litigating under that disputed premise.

The transfer posture reinforces the point. Orders granting or denying transfer are interlocutory and not independently appealable before final judgment. *See Montana Wildlife Fed'n v. Haaland*, 127 F.4th 1 (9th Cir. 2025); *Pac. Car & Foundry Co. v. Pence*, 403 F.2d 949 (9th Cir. 1968); *cf. U.S. Aluminum Corp. v. Kawneer Co.*, 694 F.2d 193 (9th Cir. 1982) (reviewing transfer order alongside an appealable preliminary-injunction ruling). Absent certification, the formation question would not reach the Ninth Circuit before the case proceeds in the transferee court. Section 1292(b) exists for that circumstance.

The request also does not depend on a prediction that one district will resolve the merits faster than the other. The Order found the congestion statistics mixed. Order at 11. The efficiency at issue is avoiding further proceedings undertaken on an unresolved contractual basis, rather than relitigating the relative speed of the two courts. That focused benefit, coupled with the controlling nature of the formation question, supplies the exceptional circumstances contemplated by *In re Cement*, 673 F.2d at 1026.

## V. <u>THE COURT SHOULD STAY IMPLEMENTATION OF THE TRANSFER ORDER</u>

Plaintiff requests a stay of implementation of the transfer Order pending determination of this motion and, if certification is granted, pending a timely petition for permission to appeal and any appeal the Ninth Circuit permits. Section 1292(b) expressly

provides that an application for interlocutory review does not itself stay district-court proceedings, while permitting the district court or court of appeals to order a stay. An express stay is therefore necessary to preserve the practical benefit of certification.

A limited stay would keep the disputed transfer from being implemented while the Court determines whether the legal premise for that transfer warrants immediate review. If certification is granted, continuing the stay would avoid requiring the parties to proceed in the selected forum while its contractual basis is under appellate consideration. Plaintiff requests only the relief needed to preserve that review and remains subject to any directions the Court gives concerning the duration or scope of the stay.

## VI. <u>CONCLUSION</u>

Plaintiff respectfully requests that the Court amend its October 14, 2026 Order to certify under 28 U.S.C. § 1292(b) that it involves the controlling question of law identified above, that substantial ground exists for a difference of opinion, and that immediate appeal may materially advance the ultimate termination of the litigation. Plaintiff further requests a stay of implementation of the transfer Order pending resolution of this motion and, if certification is granted, pending a timely petition for permission to appeal and any permitted appeal.

DATED: October 21, 2026

Respectfully Submitted,

**KJC LAW GROUP, A.P.C.**

By: */s/ Kevin J. Cole*
Kevin J. Cole, Esq.

**PARONICH LAW, P.C.**

By: */s/ Anthony I. Paronich*
Anthony I. Paronich, Esq.

*Attorneys for Plaintiff*

*Robert Freund*

**CERTIFICATE OF SERVICE**

I certify that on October 21, 2026, I electronically filed the foregoing document(s) with the Court's CM/ECF system, and that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/ Kevin J. Cole*
Kevin J. Cole